JOHN W. WARREN, executor of ELIJAH MORRIS, dec'd,

*vs.*

ANN E. MORRIS, widow, JOHN W. CLYMER and ELIZA-
BETH his wife, WILLIAM S MORRIS, JAMES H.
MORRIS, ELIJAH MORRIS, MARY LAURA MORRIS and
ANN ELIZA MORRIS.

*Kent, Sept. T. 1871.*

A bequest to the testator's widow of "one-third part of my whole estate ac-
"cording to law, with the exception of her interest in two indentured
"servants and one bay mare hereinafter mentioned," means that the
widow shall take of the whole estate, real and personal, converted into
one fund, such proportion as she would have taken in his estate by law
had the husband died intestate, one equal third part, neither less nor
more.

Such bequest, not being a case under the statute, is, under the general doctrine
of courts of equity upon that subject, sufficient to put the widow to her
election.

A direction by the testator that his real estate shall be sold, and a bequest to
his widow of a share of the proceeds, do not *per se* sufficiently demonstrate
an intention to bar dower.

The phrase "according to law," though an inapt expression, is not, on that
account, to be rejected. In the interpretation of wills, all expressions,
however inartificial, are to be construed as helps toward ascertaining the
testamentary intent.

The joining of the widow in a conveyance, by the executor of the testator's
real estate, without any stipulated consideration for her right of dower,
must be taken as her election to take under the will.

A widow is deemed a purchaser of a devise or bequest to her in lieu of dower,
and upon a deficiency of assets to pay both debts and legacies, the legacy
to her is not required to abate with the rest, but only liable for such defi-
ciency as may remain after the other assets shall have been exhausted.

It does not matter that her legacy may exceed the value of the dower, since
the testator is the judge for what price he will purchase the renunciation
of it.

37—DEL. CH. IV.

The bequest of the widow of one-third " according to law," does not subject her to abatement with other devisees or legatees in case of a deficiency of assets.

A residuary legatee has no right to call upon the particular legatees to abate.

The statute which saves the right of post-testamentary children, does not disturb any titles vested under the will.

A legacy given to the widow in lieu of dower, is subject to contribute towards the share of a post-testamentary child.

Where the rights of post-testamentary children involve a simple question of abatement or contribution for making up an ascertained sum to which a right attaches, the ordinary jurisdiction of a court of equity is adequate to make the adjustment ; and there is no necessity to resort to the statutory proceeding for a valuation in the Orphans' Court.

BILL BY EXECUTOR FOR INSTRUCTIONS.—This bill was filed by John W. Warren, executor of the last will and testament of Elijah Morris, deceased, for the instruction of the Court as to his duty as executor and the rights and interests of the parties claiming under the said will.

The will was executed December 7, 1861, and duly probated March 25, 1868, the testator having died February 26, 1868.

The provisions of the will, so far as they are material, were as follows :

"2d. I direct that all my debts and funeral expenses "be paid as soon after my decease as possible, out of the "first moneys that shall come into the hands of my exec-"utors from any portion of my estate, real or personal. "3d. I direct that my personal estate be sold at public "auction at the highest cash price in good and current "money, but not upon credit, and that all the real estate "of which I shall die seized or possessed, shall be sold by "my executors for its reasonable value for like current "money, but not upon credit, and to effectuate this my in-"tention I do hereby vest in my executors full power and "authority to dispose of my real estate in fee simple or

"otherwise in as full and large a manner in every respect, "as I could myself do if living.    4th.  I give and bequeath "unto my beloved wife, Ann Elizabeth Morris, one-third " part of my whole estate according to law, with the ex- " ception of her interest in two indentured servants and " one bay mare hereinafter mentioned.    5th.    I give and "bequeath unto my beloved daughter Elizabeth, now the "wife of John W. Clymer, the sum of two hundred dollars " to be paid to her by my executors in installments, viz. : "ten dollars at the end of six months, until the aforesaid "sum of two hundred dollars is exhausted.    6th.  I give " and bequeath unto my son, John S. Morris, one bay mare " colt.    7th.  I give and bequeath unto my son, William S. " Morris, the unexpired term of the indentured servant, " John W. Pratt (negro).    8th.    I give and bequeath unto " my son, James H. Morris, the unexpired term of the in- "dentured servant, Alfred Pratt (negro).    9th.  I give and "bequeath unto my four sons, viz. : John S. Morris, Wil- "liam S. Morris, James H. Morris and Elijah Morris, the "balance of the whole of my estate after deducting the " aforesaid legacies, to be equally divided among them. " 10th.  And I do hereby make, constitute and appoint " John S. Morris and John W. Warren executors of this " my last will and testament."

In addition to the provisions of the will, as stated, the bill alleged that John S. Morris had died in the lifetime of the testator, and that, upon the probate of the will, letters testamentary thereon were granted to the complainant ; that at the date of the will, the testator owned a farm in Murderkiln Hundred which he had sold in his lifetime ; that the only real estate of which he had died seised, was a farm of two hundred and forty acres in Murderkiln Hundred purchased from Peter M. Lindale ; that the testator left to survive him his widow, Ann Elizabeth Morris, and six children, viz : William S. Morris, James H. Morris, Elizabeth, wife of John W. Clymer,

Elijah Morris, Mary Laura Morris and Ann Eliza Morris. John S. Morris had died unmarried, intestate and without issue in the lifetime of the testator, and the daughters Mary Laura and Ann Eliza were born after the making of the will and in the lifetime of the testator, who died without altering it, or otherwise making any provision for them. There was no intestate property, real or personal and Clymer and his wife resided out of the county. The son Elijah and the two last named daughters were minors, aged respectively about ten, seven and four years at the time of the filing of the bill.

The complainant further alleged that, as executor, he had sold the personal property of the testator and applied the proceeds to the payment of debts, funeral and other expenses, that he had sold the real estate and applied a part of the proceeds to the payment of debts, and that the widow joined in the making and execution of the deed to the purchaser to perfect his title to it, but subject to and relying upon the decision of this Court as to its effect upon her rights and interests under the will. Further, he was now ready and willing to distribute the residue among the parties entitled to the same under the will and according to law; that he was advised and believed that the said Elijah Morris died intestate, but he had grave doubts as to his duty in the premises under the will, and the rights and interests of the said widow and the several children respectively; and by the advice of his counsel, to obtain the directions of the Court touching his duty, and the rights and interests of the parties entitled under the will, or under and by virtue of the laws of this State, he prayed that the defendants might answer all and singular the premises, and that he might be directed by the Court in what manner to proceed in order to the faithful execution of the will, and that the true construction of the same in relation to his duties as the executor of it, and the rights and interests of the parties affected by it, might be declared by the Court.

Ann E. Morris, the widow, in her answer, admitted all the facts alleged, except as to the application of the proceeds of sale and settlement of the estate, of which she knew nothing. She stated the object of her joining in the deed to have been, to enable the executor to obtain the full value of the land, and with that view, permitted it to be inserted in the advertisement and announced at the sale, that if the Chancellor should decide that she was entitled to one-third of the whole estate absolutely, the purchaser should be entitled to hold during her life, one-third part of the proceeds of the said real estate so purchased by him, upon his paying her the interest thereon, annually.    She insisted,—1st.    That if it should be held that the devise to her was to be taken in lieu of dower, she was, by joining in the deed and thereby waiving her dower by metes and bounds, a purchaser for value of the interest devised, and was therefore entitled, absolutely, to one-third part of the whole estate and exonerated from the debts against it, unless the remaining two-thirds of it should be insufficient no pay the debts, and in that case, her legacy should be diminished to the extent of the deficiency only.

2d. That if the devise is not to be taken in lieu of dower, but in addition thereto, she was entitled not only to the interest during her life on one-third part of the proceeds of the real estate, less the expenses of sale, as equivalent for dower; but also, to one-third part, absolutely, of the surplus of such proceeds, after the payment of so much of the debts as remained unsatisfied out of the personal estate, which she insisted was first applicable to them and should be now treated as so applied.

3d. That if neither of the above stated views should be accepted, she was entitled, during her life, to one-third part of the whole estate, irrespective of debts.

The answer of Elijah, Mary Laura and Ann Eliza, the infants, admitted all the facts stated, except as to the

executor's own acts, of which they knew nothing, and submitted themselves, as infants, to the protection of the Court.

The answer of Clymer and wife, and that of William L. and James H. Morris, admitted all the facts alleged, except as to the application of the proceeds of the sales, of which they knew nothing, and insisted upon their own rights, respectively, under the will, claiming that the widow's joining in the deed was a relinquishment of dower and an election to take under the will.

By agreement of counsel filed, the testamentary accounts of the executor, the last in July 7, 1871, were made part of the case.

The cause came on to be heard September 29, 1871.

*Day*, for the executor, took no part in the argument, which was solely as to the rights of the parties claiming to be entitled.

*Comegys*, for the widow.

The testator directs a sale of real and personal estate. This is an absolute conversion,—"out and out" The effect is the same as if the whole were personal estate. Then he gives one-third to his wife "according "to law."

1. The first question is, whether this is such a devise as puts the widow to her election. The Orphans' Court, a year ago, upon application, declined to put her to an election in equity under the Statute, not considering the devise within it. Then the question now is, whether this is a case of election *independently of the Statute*. On this point, the rule, as now settled is, that to bar her dower, the devise must be made either expressly or by clear implication in lieu of dower.

A direction to sell, is presumed to apply only to what the husband has, which is his estate subject to the dower :—that being a title paramount to the husband's. Such a direction raises no necessary implication. 2 *Redfield on Wills*, 738 ; *Adsit vs. Adsit* 2 *Johns. Ch.* 448 ; *Wood et al. vs. Wood et al.*, 5 *Paige* 596, 601 ; *Fuller vs. Yates*, 8 *Paige* 325 ; *Foster vs. Cook*, 3 *Bro. C. C.* 347 ; *Birmingham vs. Kirwan*, 2 *Sch. & Lef.* 444.

In this case, the devise to the wife—one-third of the proceeds of sale according to law—is not inconsistent with dower in the land. Though the sale might be more beneficial clear of dower, yet, upon clear authority, this circumstance is held insufficient.

The result of this view is, that the widow is entitled to one-third of the proceeds of the real estate for life as widow, and also as devisee to one-third of the residue of the estate subject to debts, taking this absolutely.

But if the devise is taken to be in lieu of dower, then she is entitled, as devisee, absolutely to one-third of the whole proceeds of real and personal estate clear of the debts.

The widow's joining in the deed was not a waiver of dower as against the estate, but only to make title to the purchaser.

But if the joining *was* a waiver altogether, she becomes a purchaser, and her share as devisee does not abate, and she takes one-third of the whole estate absolutely, so far as the two-thirds is sufficient to pay debts. 2 *Redf. on Wills*, 749.

The whole estate is $7,722.32 and the residue after paying debts, $1,849.

The widow's share of this one-third is affected only by the birth of two children after the will. They take by statute each one-sixth of the estate, as if he had died in-

testate, *i. e.* one-sixth of the clear balance, $1,849.02. She. cannot claim against these two children ; but as against the rest, she must take all that is left to the extent of one-third of the whole estate.

3. But if neither of the two views presented are sustained then she is entitled to one-third of the residue absolutely after the payment of debts, not qualified by the words " according to law "

As to shares of the residue devised to John S. Morris and the others.

The authority cited by the other side from Powell, shows that when there is a conversion and blending of real and personal estate, there is no resulting trust to the heir, but the share falls into the residue.

*Smithers*, for the adult children.

The intention of the testator is the guide of the Court. The question is purely one of intention to be gathered from the will, it matters not from what phrases, forms of expression, indications or *indicia* it may be inferred. It is sufficient that the Court is convinced by the whole tenor and effect of the will in question.

*First.* The interest of the widow,

There can be no claim of dower, as such. Her remedy for that was to decline to join and claim against the purchaser. This she chose not to do, but *in fact* elected to take under the will and relinquished her dower. The fund in Court is the fruit of the sale *under the will* so brought in. The executor has nothing to do with any. claim or right as between the widow and purchaser, and holds nothing as its equivalent. No claim in respect of dower can attach to the fund in Court.

Testator blends real and personal estate and subjects

.the whole to debts.   He directs a sale of both per-
sonal and real estate, applying to both the same expres-
sions, and treats the produce of both as an entire personal
estate, leaving for the purposes of his will no real estate.
Then he directs payment of debts out of the whole, before
making any distribution. The gift to the widow is a share
of the *corpus* of the estate absolutely.   The phrase "ac-
"cording to law " has been construed. in our courts and
held to incorporate into the will the law of the state,
applicable to the subject matter.     *Burton vs. Burton*, 4
*Harring.* 38 ; *Horsey vs. Horsey*, 1 *Houston* 438.

In this case, the testator must be held to refer *to some
law* " one-third of my whole estate according to law."
This phrase, being applied to personal estate, means the
statute of distributions.   This view is confirmed by the
exception of certain chattels then in her possession, two
servants and a bay mare. She was to take no interest in
these, as she would have done under the statute of dis-
tributions incorporated in the will, if not excepted.

This is demonstrative of his intent to give it in lieu
of dower.   Including the *corpus*, he must be taken to in-
tend a distribution of the entire estate converted.

The phrase *"whole estate"* relied on as making the
widow's share clear of debts, applies also to the share
given to the children.

The *principle* of the will is equality, according to the
statute of distributions, except as to the $200 given to
William Clymer, and the specific bequests of servants and
bay mare.

The construction taken for the widow leaves the
children provided for in the will nothing, giving the widow
*all* (except as to the two post-testamentary children
which could not have been contemplated.) Can the testator
be supposed to have so intended? Did he not clearly intend

them to take two-thirds of that of which the widow should take one-third.    He is presumed to be cognizant of the condition of his estate, and the will is to be construed in view of it.

*Second.* Interest of the post-testamentary children.

The statutory provision is *Revised Code* 274, *Ch*. 84. *Sec*. 12.

One question is whether they take a share of *land* as if no will was made, or only such *portion* of the fund re-sulting, *i. e.*, of the fund as it passes under the will.    It would seem the latter. *Coates vs. Hughes*, 3 *Binn*, 498.

At all events, they can take, only, each one-sixth ex-clusive of John.

The question is, whether the share which John would have taken, does not result to all the heirs as intestate, and if so, whether that portion is not to be first applied toward making up the share of those children.    2 *Powell on Dev*. (78.)

The present falls under Mr. Jarman's 3d class, *i. e.* of cases where a disposal of part of the proceeds of con-verted real estate is made to an object capable of taking, but it fails by matter subsequent to date of will, as by lapse.

*Third.* How are their shares to be made up?

A similar Statute in New York is construed, in *Mitchell vs. Blain*, 5 *Paige*, 588, that the devisees or legatees are to contribute ratably to make up the share without distinction as to general or specific residuary legatees and a legacy to the widow in lieu of dower is to be estimated.

In this case, all must contribute, as well the widow as the children taking under the will.

The widow electing to take under the will, took subject to all the incidents and contingencies affecting her share as a *legacy*. It being in lieu of dower, gives her no superior claim over the legatees as to anything affecting the general fund; its being in lieu of dower, has no other effect than to leave her an election, but the election being made, she stands on the same footing with other legatees. She is, therefore, equally subject in contribution.

THE CHANCELLOR :—

This is a bill for instructions touching the disposal, by the Executor of Elijah Morris deceased, of the unappropriated balance of the decedent's personal estate. The rights of the parties claiming an interest in the fund depend upon several questions, which have been argued at the bar.

*First*, is the question whether the testator's widow, Ann E. Morris, is entitled to claim both the legacy given to her by the will and her dower, in the testator's lands— taking with respect to the dower, an equivalent interest in the proceeds of sale—the lands having been converted into money under the direction of the will and discharged of dower by reason of her joining in a deed to the purchaser. This not being a case under our statute, touching the election by the widow between dower and a devise of real estate, it is governed by the general doctrine of election as administered in courts of equity. This doctrine precludes a party taking a benefit by deed or will from asserting any title or claim clearly inconsistent with the provisions of the instrument under which he takes—putting him to his election between the two. In its application to the case of dower it is nowhere better stated than by our Court of Appeals in *Kinsey vs. Woodward*, 3 *Harring.* 474. " In regard to dower," says the Court, " it " seems from all the cases to be an established rule that " a court of equity will not compel the widow to make

"her election, unless it be shown by the express words "of the testator, that the devise or bequest was given in "lieu of or satisfaction of dower ; or unless it appears, that "such was the testator's intention, by clear and manifest "implication arising from the fact that the dower is plainly "inconsistent with the devise or bequest, and so repug- "nant to the will as to defeat its provisions. If both "claims can stand consistently together, the widow is "entitled to both, although the claim under the will may "be much greater in value than her dower." This state- ment of the rule is fully sustained by authority. *Birming- ham vs. Kirwan,* 2 *S. & L.* 451; *Strathan vs. Sutton,* 3 *Ves. Jr.* 249; *Gibson vs. Gibson,* 1 *Drewry,* 411, (17 *E. L. & Eq.,* 352); *Hall vs. Hill, Dru. & War.* 107 ; *Bending vs. Bending,* 3 *Kay & Johnson* 257; (*cited* 2 *Sto. Eq. Jur. sec.* 1088 *a*) ; *Adsit vs. Adsit,* 2 *Johns. Ch. R.* 451.

Applying this rule to the present case I am of opinion that there is sufficient in this will to put the widow to her election. This conclusion is not drawn from the fact that the testator has directed his real estate to be sold and has given to his widow a share of the proceeds. These circumstances it is fully settled do not *per se* sufficiently demonstrate an intention to bar dower. *French vs. Davis,* 2 *Ves. Jr.* 572. *Ellis vs. Lewes,* 3 *Hare* 310, (25 *Eng. Ch. R*) ; *Gib- son vs. Gibson,* 1 *Drewry* 42, (17 *Eng. Law & Eq.*) *Wood vs. Wood,* 5 *Paige* 596. But the very terms of the bequests made to the widow do, upon a fair and reasonable con- struction, import that this was to be the whole provision taken by her out of the testator's estate. The bequest runs thus : "I give and bequeath unto my beloved wife "one third part *of my whole estate according to law,* with "the exception of her interest in two indentured servants "and one bay mare hereinafter mentioned." Now the obvious and common sense meaning of this clause is that the widow shall take of the whole estate, consisting of the proceeds of both real and personal estate converted

into one fund, such proportion as she would have taken in his estate by law had the husband died intestate, to wit, one equal third part, neither less nor more. One-third part "according to law," must mean that share or proportion, to wit, the one-third part, which the law gives to the widow under an intestacy. It can bear no other sense. And as applied to what the testator terms "my whole "estate," it must have contemplated his estate previous to any assignments of dower out of the lands. For a widow after taking dower has already her share, "accord- "ing to law," of the lands, and as to that part of the testator's estate there remains nothing to which the terms of the bequest could apply. With respect to the residue remaining after an assignment of dower, the widow could take nothing "according to law," but only by way of testamentary gift over and above her share according to law ; and yet it is perfectly clear that nothing is here given but her share or third part "according to law." Whenever she has got that the bequest is satisfied. The whole purpose of this clause was to leave to the widow her exact proportion of the testator's estate under the intestate law and the statute of distributions, modified as to the real estate by the direction for its conversion, the effect of which was to substitute for her dower out of the land an equivalent share of the proceeds, a modification of dower incidentally beneficial to the widow and a sufficient inducement for her acceptance of the bequest.

This phrase "according to law," although an inapt expression is not on that account to be rejected. In the interpretation of wills all expressions however inartificial, are to be construed as helps toward ascertaining the testamentary intent. Such effect has been given to kindred expressions by our own courts as in *Burton vs. Burton et al.*, 4 *Harring.* 38, and *Horsey vs. Horsey's Exrs.* 1 *Houston* 438. My conclusion is that the widow was at the testator's death put to an election between dower and the

legacy, and her joining in the conveyance of the testa-
tor's real estate without any stipulated consideration for
her right of dower must be taken as her election of the
benefit given by the will.

This brings us to the second question, viz : whether
her share of the estate is subject to abatement with the
other legacies for the payment of the debts, or is liable
only for such deficiency as may remain after the other
assets shall have been exhausted. · Or to put the question
in the form presented by this case—the debts having already
been paid out of the general estate, is the widow entitled
to the full satisfaction of her legacy out of the remaining
assets before any part shall be applied to the other lega-
cies ? I am clearly of that opinion. In the first place,
a widow is deemed a purchaser of a devise or bequest
made to her in lieu of dower. The transaction has all
the force of a contract between her and her husband.
Consequently upon a deficiency of assets to pay both
debts and legacies, a legacy to her in lieu of dower
does not abate with the other legacies, but is liable
only for such deficiency as may remain after the other
assets shall have been exhausted. Nor does it matter
that the benefit given to her may exceed the value of
the dower, for the testator is the judge for what price
he will purchase the renunciation of her dower, and
no legal injury can result to other devisees or legatees,
they being mere volunteers from whom the testator might
if he saw fit, devise away his whole estate. The authori-
ties on this point are numerous and uniform. *Burridge
vs. Bradey*, 1 *P Wms.* 127 ; *Blower vs. Merret*, 2 *Ves. Jr.*
420 ; *Davenhill vs. Fletcher, Amb.* 244 ; *Heath vs. Dendy*,
1 *Russ.* 543; *Norcott vs. Gordon*, 14 *Simons* 258 (*37 Eng. Ch.
R.*); *Loocock vs. Clarkson*, 1 *Desauss* 471; *Stuart vs. Carson*,
1 *Ib.* 500; *Isenhart vs. Brown*, 1 *Edw.* 411; *Williamson vs.
Williamson*, 6 *Paige* 298 ; *Hubbard vs. Hubbard*, 6 *Met.* 50;
*Pollard vs. Pollard*, 1 *Allen* 499 ; *Reed vs. Reed*, 9 *Watts*, 263;

*Lord vs. Lord*, 23 *Conn.* 327. It is true that a testator may so charge a devise or bequest made to the widow as to make it liable to his debts and in such case she must take it so charged though made in lieu of dower, and must submit to an abatement with other devisees or legatees in case of a deficiency of assests ; and unquestionably the intention so to charge her devise or legacy may be implied. Accordingly it is argued that the bequest to this widow of one-third "according to law," is by this phrase subjected to all the incidents which would have attached to a distributive share of one-third taken by the widow under the statute of distributions, had there been an intestacy, and that among these incidents it is subject to an abatement for the payment of debts equally with other distributees. But this carries the force of the phrase "according to law" beyond the testator's real purpose. He meant by it simply to indicate his reason for designating one-third for her share under the will just as if he had said, "I give to my wife "such proportion of my estate as she would take by law "*i.e.*, one-third," or "I give her one-third in lieu of dower." But I can read no intention that what he gave as a legacy in lieu of dower should be taken otherwise than subject to the real incidents attaching to such legacy, and among them to a preference against other legacies with respect to its liability for debts. The words "according to law" so far as they go to fix the proportion or to explain the testator's reason for it, have a natural sense, such as the testator of an inartificial will may be supposed to have comprehended ; but these words must be severely strained to make them import into the will, the statute of distributions with all its legal consequences, converting the legacy in effect into a distributive share so as to dispossess the widow of the benefit of the rule applicable to a legacy given in lieu of dower. This is to read the bequest as if the testator had said, not "one-third part of my whole es- "tate according to law," but "one-third &c. to be taken "subject to all the same incidents as if it were taken under

" an intestacy." It is difficult to suppose that a testator could have employed words so simple and inartificial as those of this bequest with a view to legal consequences so technical.

But I now proceed to another distinct ground for exempting the widow's legacy from debts as between her and the residuary legatees. A residuary legatee has no right to call upon the particular legatees to abate. The whole personal estate not specifically bequeathed must be exhausted before these legatees can be obliged to contribute anything out of their bequests. 1 *Roper on Legacies* 411 ; 2 *Redfield on Wills*, 549.

The rule proceeds upon the clear principle that until both the debts and the legacies are paid there is no residue. The principle applies although the residuary clause makes no reference to the legacies; *a fortiori*, where, as in this case, the residue is expressly given " after deducting the " aforesaid legacies, " which are the bequest to the widow of one-third of the whole estate, the legacy of $200 to Mrs. Clymer and the specific bequests of the indentured servants and bay mare. An argument against the exemption of the widow from abatement with the residuary legatees was drawn from the use, both in the bequest to her and in the residuary bequest, of the same phrase "my whole " estate, " the bequest to the widow being of " one-third part " of my whole estate " &c., and the residuary bequest being of " the balance of my whole estate. " Showing, as was argued, that, in the contemplation of the testator these bequests were to attach to different parts of the same subject-matter ; that out of whatever funds the widow might take, the residuary legatees should also take, she taking one-third and they two-thirds. The effect of such a construction would be to divide between the widow and the residuary legatees the surplus after first paying the debts out of the whole, since otherwise as the estate has turned out, the widow will take all and the residuary legatees nothing. The whole

force of this argument lies in its treating the bequest to the widow and the residuary bequest as being in effect the division of a specific fund, as if a testator having an invested fund of $10,000 should give his widow one-third of it in lieu of dower and the remaining two-thirds to his four sons, and the question of abatement for debts were to arise between them. Now, in the first place, even were this such a case, it would be the fair and reasonable inference that the testator intended the legatees to take their respective portions of the fund subject to the different legal incidents attaching to each of those portions springing from their different relations to the testator,—the widow being a purchaser,—and the residuary legatees being volunteers. The testator would be presumed to understand this difference and in the absence of any expression to the contrary to intend it to operate. But in the next place, this is not the division of a specific fund, but only the ordinary case of a general residuary bequest after legacies previously given; and more than this, the residue is here given expressly subject to the prior payment of the legacies. First is a bequest to the widow of one-third of the estate, which has already been construed to mean the whole estate as held by the testator at his death subject to the direction for conversion and to the reservation of the indentured servants and bay mare. Then there is a bequest of $200 to Mrs. Clymer, and also of the servants and bay mare to other children of the testator. Then follows the residuary bequest in these words ; " I give and " bequeath unto my four sons &c., the balance of my whole " estate after deducting the aforesaid legacies to be equally " divided among them." The use here of the words "my " whole estate " being the same words used in the bequest to the widow to whom he had given " one-third part of my " whole estate &c.," is purely accidental and had no special significance. " The balance of my whole estate " means nothing different from the ordinary phrase "all the residue " of my estate." This, then, is a bequest to the sons, not of .

any specific portion of the estate, say two-thirds, as to the widow it was a gift of one-third, but it is a bequest of the general residue more or less, and that too, expressly, after deducting the prior legacies, to wit ; the widow's third part of the whole estate, the legacy to Mrs. Clymer and the specific legacies.

I proceed now to apply the rule exempting the widow's share from abatement for debts. The effect is to give her the whole fund now before the Court, subject to the right of the post-testamentary children which will be presently considered. The whole estate amounted say to $7722.33. One-third part of this sum, say $2574.11 was the widow's share in lieu of dower.

Of course the whole estate is subject first to debts and expenses of administration, as well against the widow as against the other legatees ; but these being paid she is entitled next in priority to have the surplus applied toward satisfying her legacy. That will wholly absorb the unappropriated balance of $1829.02, leaving no assets for the other legacies, except the servants and bay mare which were expressly reserved for the specific legatees. Mrs. Clymer takes nothing, because she is a volunteer claiming against a purchaser ; and the four sons named in the residuary clause take nothing, both because they are volunteers and, additionally, because they are residuary legatees. There remains the third and last question, viz ; what are the rights of the post-testamentary children, Mary Laura and Ann Eliza, what shares of the estate do they take, and how are their shares to be made up ?

The questions are answered by our statute for the benefit of children born after a will is made. *Rev. Code*,274,*sec.* 12 *&c.* Under this statute such a child takes the same portion of its parent's estate both real and personal that he would have been entitled to, if such parent had died intestate. Elijah Morris left to survive him the widow and six chil-

dren including the two post-testamentary children.   Had
he died intestate these two children would have been enti-
tled each to one equal sixth part of the then balance of the
whole estate, subject to the widow's dower in the lands
and to her third of the personal estate.   This is the share
to which the post-testamentary children are entitled.
Then with respect to the mode of making it up for them,
it is material in this case to observe that the statute in its
provisions for making up a post-testamentary share of real
estate does not disturb any titles vested under the will.  It
leaves all the dispositions of the will touching both real
and personal estate in full force, charging the divisees and
legatees with the contribution proportionably of such
sums in money as may be required to make up the share of
a post-testamentary child after applying to such share any
intestate estate which there may happen to be.   Hence
the provision is that under certain proceedings to be taken
in the Orphans' Court, the whole estate, real and personal
shall be appraised with a view to ascertain the value of
the entire post-testamentary share ; then if there be any
intestate real estate, that is to be allotted at a valuation
subject to dower toward making up the share.   Should
such intestate real estate prove insufficient, then any
intestate personal estate is to be applied.   If there shall
be no intestate estate, either real or personal, or if such
as there may be shall still leave a deficiency in the share
to be made up, then the direction of the statute is (p. 275,
sec. 19) that " the devisees and legatees taking under the
"will of the deceased parent shall proportionably con-
" tirbute such sum or sums of money as added to the intes-
" tate estate, will be sufficient to raise the portion of such
" after-born child or children."   No remedy for effecting
the contribution among the devisees and legatees is pro-
vided ; but the subject is left to the ordinary jurisdiction
of the Court of Chancery which is quite adequate.   It ap-
pears then that the policy of the statute is not to revoke
the will, nor to create an intestacy in such sense as to

give to the after-born children the same shares or interests in *specie* which they would have taken had no will been made. Its manifest purpose is to leave all the provisions of the will in full force, securing for the after-born children an equivalent in value for the shares *in specie* of which they may have been deprived by the testator's dying testate. This principle of construction was applied to a statute in Pennsylvania not so clear in its provision as ours. *Coates vs. Hughes*, 3 *Binn.* 498. So, also to the New York statute—to which ours is similar. *Mitchell vs. Blain*, 5 *Paige* 588. This construction of the statute relieves the case of the embarrassment which otherwise would result from the conversion of the real estate under the direction of the will. For we may give full force and validity to this direction so as to leave the title of the purchaser unincumbered by the claim of these children, and deal with the proceeds of sale in estimating and making up the shares of the children as personal estate of the testator, precisely as if he had died leaving the money instead of the land.

We are now enabled to ascertain exactly the shares of the post-testamentary children and to decree how the shares shall be satisfied. The testator has left, after the payment of his debts and expenses of administration, a clear estate of $1849.02 which balance though resulting from a conversion of the real estate is to be treated as personal estate. The children take out of this balance such part as the statute of distributions would have given them under an intestacy, *i. e.* each, one-sixth of the surplus after deducting the one-third given by that statute to the widow, which is one-ninth part of the whole, making for each of the children $205.44. No occasion for abatement, or for contribution between different legatees, arises in thise cas, as ordinarily is necessary where several legatees take an actual benefit under the will ; because here the widow is the only legatee who takes any thing,

except the specific legatees. But for the rights of the post-testamentary children, she would be entitled to the whole unappropriated balance. The adjustment is therefore fully made by deducting from the unappropriated balance of $1849.02, the shares of the two children, leaving the residue of it to the widow. There can be no doubt that under the statute this unappropriated balance, though falling to the widow as a legacy in lieu of dower, is subject to contribute towards the share of a post testamentary child. There is no distinction in this respect between specific, general and residuary legacies, including a legacy given in lieu of dower, unless in the latter case a special equity as between the widow and post-testamentary child arises out of the fact that the latter has taken a share of the real estate discharged of dower in consequence of a legacy to the widow, in which case he will not be allowed additionally to claim a ratable proportion of the legacy given in lieu of the dower. *Mitchell vs. Blaine*, 5 *Paige* 590. Such an equity does not arise in this case. The result now arrived at disposes of a question raised in the argument as to the destination of a supposed lapsed share of John Morris under the residuary bequest in consequence of his dying after the date of the will and in his father's lifetime. Had there been a residue, after satisfying the widow's legacy, to pass to the residuary legatees, there would be a lapsed share in consequence of John's death, and the question would then have arisen whether such lapsed share should sink into the residue or result to the heirs at law as intestate estate, in which latter case that share would have been first applicable to the claim of the post-testamentary children, and the deficiency would have been apportioned between the widow's legacy and the residuary estate. But as the estate has turned out there is no residuary estate, and consequently there is no lapsed share to be taken into consideration.

The result of the whole investigation is that the post-

testamentary children, Mary Laura and Ann Eliza, are each entitled to one equal ninth part of the unappropriated balance in the hands of the executor, and that the widow, Ann E. Morris, is entitled to the residue. In this case there is no necessity to resort to the Orphans' Court under the provision of the statute. The statute contemplates the proceeding in the Orphans' Court only where there is real estate rendering a valuation necessary in order to ascertain the amount of a post-testamentary share, and in some cases where there is intestate real estate, to allot a part of it or the whole toward making up the share. But where it is, as here, a simple question of abatement or of contribution for making up an ascertained sum to which a right attaches, the ordinary jurisdiction of a court of equity is adequate, and the adjustment may be made here. It will be observed that in making up the post-testamentary shares, I have taken no notice of the indentured servants and the bay mare. The widow is entitled to have the legatees of these contribute proportionately with her, but the value is small, and an interlocutory order would be necessary in order to ascertain it. I have presumed that the widow would waive this claim and let a decree be made irrespective of these small legacies; but if she insist upon this right, it must be conceded.

NOTE. An appeal was taken in this case, and it was heard at the June Term, 1872, of the Court of Errors and Appeals. That Court held the legacy to the widow to be one-third of the estate *after the payment of debts and funeral expenses*, subject to abatement in favor of the post-testamentary children, instead of one-third of the original estate as held by the Chancellor. This was the result of a different construction given to the words " according " to law," and the decree was altered in accordance with that view. See 4 *Houston's Del. Rep.* 414.