CHARLES T. B. KEEP et al., administrators,

*v.*

DAVID L. MILLER et al.

A contract for the sale of lands, which equity would have enforced at the suit of the vendor, creates an equitable conversion of the premises from the time of its execution, so that the widow of the vendor (the latter died intestate shortly after the contract was made) is entitled to her share of the proceeds as personal property, as against the next of kin and heir-at-law of her husband, although the court has refused to compel the vendees to carry out the contract because of such heir's laches, whereby its execution had become inequitable, there being no fault on the part of the widow.

Bill for relief. On final hearing upon pleadings and proofs.

*Mr. Alfred Mills,* for complainants.

*Mr. S. D. Haines* and *Mr. S. B. Ransom,* for defendant Faulks.

NOTE.—A contract by a testator, made after his will, for the sale of lands thereby devised, is a revocation of such devise in equity, and the purchase-money is personal estate, *Mayer* v. *Gowland, 2 Dick. 563; Loring* v. *Cunningham, 9 Cush. 87; Sutter* v. *Ling, 25 Pa. St. 466; Donohoo* v. *Lea, 1 Swan 119;* but not at law, *Mayer* v. *Gowland, 2 Dick. 565; Hall* v. *Bray, Coxe 212; Teneick* v. *Flagg, 5 Dutch. 25;* and so of an option not exercised by the purchaser until after the vendor's death, *Collingwood* v. *Row, 3 Jur. (N. S.) 785; Weeding* v. *Weeding, 1 Johns. & H. 424; Lawes* v. *Bennet, 1 Cox Ch. 167.*

Such conversion is effected, even if the contract cannot be specifically performed precisely, as where compensation can be partly made by the vendor's representatives, *Knollys* v. *Alcock, 7 Ves. 558, 565;* see *Nelson* v. *Hagerstown Bank, 27 Md. 51;* or the contract is rescinded because the vendee paid only one instalment of the purchase-money, and his representatives have been unable to pay any more since his death, *Bennett* v. *Tankerville, 17 Ves. 170;* or the purchasers abandoned their contracts because they were unable to obtain conveyances from some of the devisees who were infants, *Bullock* v. *Bullock, 1 J. & W. 603; Tebbott* v. *Voules, 6 Sim. 40; Boice* v. *Prichett, 6 Dana 231; Sutphen* v. *Fowler, 9 Paige 280; Forman* v. *Stickney, 77 Ill. 575;* or lunatics, *Swartwout* v. *Burr, 1 Barb. 493;* or the purchaser, by laches, lost his right to a specific performance of the contract, which was enforceable at the

Keep v. Miller.

THE CHANCELLOR.

The bill states that John B. Miller, deceased, late of Madison, in the county of Morris, made and entered into a valid contract, in writing, with Jehiel K. Hoyt, upon the 25th of April, 1872, for the sale and conveyance by him to the latter, or to such company or individuals as might be named by said Hoyt, of certain land therein mentioned, for the price of $800 an acre; and that on or about the 10th of June following, he made another like agreement, in writing, with Hoyt, for the conveyance to him, his heirs and assigns, or to such person or persons as he might designate, of the same property, on or before the 1st day of September then next, for the price of $39,392, to be paid, and which Hoyt thereby stipulated to pay, as follows: $100 upon the execution of the agreement and $4,900 on the delivery of the deed, the balance, $34,392, to be secured by the bond of the grantee or grantees, and his or their mortgage of the property; that the time for the delivery of the deed was, by another agreement, in writing, made on the 20th of August,

---

vendor's death, *Curre* v. *Bowyer, 5 Beav. 6;* or the contract is rescinded by the mutual consent of the purchaser and testator, so that the latter is restored to his former title and dies seized of the same estate, *Walton* v. *Walton, 7 Johns. Ch. 258; Selden* v. *Pearsall, 1 N. Y. Leg. Obs. 277; Hudson* v. *Cook, L. R. (13 Eq.) 417;* but see *Brown* v. *Brown, 16 Barb. 569; Wheatley* v. *Calhoun, 12 Leigh 264;* or is abandoned by the purchaser's failure to carry out the purchase, and the estate repurchased the land under his vendor's lien, *Andrew* v. *Andrew, 8 De G., M. & G. 336;* see *Hugunin* v. *Cochrane, 51 Ill. 302; Warren* v. *Van Alstyne, 3 Paige 513; Duke* v. *Brandt, 51 Mo. 221; Slaughter* v. *Culpepper, 44 Ga. 319.*

A rescission of the contract *after* the vendor's death, was held to reconvert the estate into land, *Leiper* v. *Irvine, 26 Pa. St. 54;* but not to affect the rights of the vendor's widow therein, *Rangler's Appeal, 3 Pa. St. 377; Leiper's Appeal, 35 Pa. St. 420; Rose* v. *Jessup, 19 Pa. St. 280; Lunsford* v. *Jarrett, 11 Lea 192.* The terms of the will may be so drawn that, notwithstanding such conversion, the devisees of the land may still obtain the benefit of the fund, *Drant* v. *Vanse, 1 Y. & C. Ch. 580; Emuss* v. *Smith, 2 De G. & Sm. 722; Wall* v. *Bright, 1 J. & W. 494, 499; Wright* v. *Minshalt, 72 Ill. 584.*

The same rules apply where the decedent is the purchaser, *Whitaker* v. *Whitaker, 4 Bro. C. C. 31; Garnett* v. *Acton, 28 Beav. 333; Hudson* v. *Cook, L. R. (13 Eq.) 417; Cooper* v. *Jarman, L. R. (3 Eq.) 98; Lobdell* v. *Hayes, 4 Allen 187; Davis* v. *Pope, 12 Gray 193; Durham* v. *Simmons, 23 Md. 232; Rowton* v. *Rowton, 1 Hen. & M. 92; Thompson* v. *Thompson, 1 Jones (N. C.) 430;* see *Broome*

Keep *v.* Miller.

1872, between Miller and Hoyt, extended to the 1st day of October then next; that Miller died September 5th, 1872, intestate, leaving a widow and a son, the defendant David L. Miller, who was his only heir-at-law; that letters of administration of his estate were granted to Theodore Little, October 1st, 1872; that after the death of John B. Miller, and on or about the 28th of September, 1872, Hoyt notified David L. Miller that he would be ready to take the deed and carry out the agreement on his part on the 1st of October then next, and requested Miller, as heir-at-law, to deliver, at that date, a deed for the property, in conformity with the contract, to Henry E. Reddish and Henry C. Ohlen, whom he designated as grantees; that David L. Miller did not and never would convey the property, except upon condition that he should receive the purchase-money for his own use; that the complainants are informed that Reddish and Ohlen, on or about the 1st of October, 1872, demanded of David L. Miller that he convey the property to them by warranty deed, free from any dower of his wife, and

*v. Monck, 10 Ves. 597; Bowen v. Collins, 15 Ga. 100; Birnie v. Main, 29 Ark. 591; Tisdale v. Risk, 7 Bush 139; Martin v. Smith, 25 W. Va. 579.*

If the heir of the vendor contests the purchaser's right on account of insufficiency of consideration, he ought to file a bill to have the agreement for sale set aside, and not rest upon inadequacy of consideration as a defence to the purchaser's bill for specific performance. *Hoddel v. Pugh, 10 Jur. (N. S.) 534.*

The vendor's widow retains her right of dower in lands contracted to be sold by him, but unconveyed at the time of his death, which she may claim instead of a share of the proceeds, and in addition to her distributive share in his estate, *Gibson v. Gibson, 1 Drew. 42; Wyatt v. Brown, 8 Sm. & Marsh. 365; Slaughter v. Culpepper, 44 Ga. 319; Grissom v. Moore, 106 Ind. 296; Jennings v. Smith, 29 Ill. 116; Adsit v. Adsit, 2 Johns. Ch. 448; Wood v. Wood, 5 Paige 596; Duncan v. Duncan, 2 Yeates 302; Riddlesberger v. Mentzer, 7 Watts 141; Whilden v. Whilden, Riley's Ch. 206;* see *Barnett v. Barnett, 1 Metc. (Ky.) 254; Norris v. Clark, 2 Stock. 51; Myers v. De Mier, 52 N. Y. 648; Herbert v. Wren, 7 Cranch 370; Grady v. McCorkle, 57 Mo. 172; Aaron v. Bayne, 28 Ga. 107.*

As to her interest in lands devised by her husband in trust for sale, see *2 Scrib. Dower (2d ed.) 451 §§ 26–31; Taylor v. Linley, 5 Jur. (N. S.) 701; Lacey v. Hill, L. R. (19 Eq.) 346; Armstrong v. Armstrong, 21 Grant's Ch. 351; Beilstein v. Beilstein, 27 Grant's Ch. 41; Morris v. Morris, 4 Houst. 414, 4 Del. Ch. 289; Watrous v. Winn, 37 Iowa 72; Gordon v. Stevens, 2 Hill's Ch. 46.*—REP.

from the dower of the widow of his father, and from the lien of certain judgments which were of record against him, David L. Miller, and tendered the money and bond and mortgage, but he would not comply with the request; that neither David L. Miller nor Hoyt, Reddish or Ohlen ever requested the widow to release her dower to Reddish and Ohlen; that she never refused to release it to them, but was at all times ready to release it upon condition that the purchase-money should be paid and secured to .be paid to the administrator of John B. Miller, and that David L. Miller was aware of her readiness to release upon that condition; that on or about the 13th of December, 1872, the widow wrote a letter to her late husband's administrator, in which she said that she had expected to join with her husband in the conveyance to the purchaser, but he died before any conveyance was made; that she was still ready to do all that she could to perform the agreement, and was ready to release her dower on condition that the purchase-money should be paid or secured to be paid to the administrator, and she offered to release her dower upon those terms, in case the administrator should take judicial proceedings to compel specific performance of the agreement; that he did bring suit .to that end in this court in December, 1872; that in January following, the widow died and the complainants in this suit were appointed administrators of her estate; that in the suit brought by the administrator of John B. Miller, specific performance was decreed, but the decree was, upon appeal, reversed, so far as Hoyt and Reddish and Ohlen, and the performance of the agreement by them, were concerned. By the decree of the court of errors and appeals, the bill was dismissed as to those defendants, but was retained as to the others, in order that the legal representatives of the widow might have an opportunity of raising, by cross-bill, the question whether they have any remedy against David L. Miller. This suit is brought, accordingly, by the administrators of Mrs. Miller against David L. Miller and his wife, and his assignee in bankruptcy (he filed his petition in bankruptcy after the decree for specific performance was entered), the administrator of John B. Miller (he refused to bring the suit or to join in it or to permit

the complainants to bring it in his name), and the administrators of a judgment creditor of David L. Miller. The prayer of the bill is that the land may be decreed to be personal property and may be sold under the order of this court; that the proceeds of the sale may go into the hands of the administrator of John B. Miller as personal property, to be administered and distributed by him accordingly; that it may be decreed that the complainants, as the legal representatives of the widow, shall have her share thereof according to law, and that, if necessary, it may be decreed that David L. Miller's wife has no dower in the property, and that the judgment above mentioned is no lien upon the premises. None of the defendants have answered except the assignee in bankruptcy.

By the decree in the above-mentioned suit brought by John B. Miller's administrator (*Miller's Admr.* v. *Miller, 10 C. E. Gr. 354; S. C. on appeal, Reddish* v. *Miller's Admr., 12 C. E. Gr. 514*), in addition to decreeing specific performance, it was decreed that David L. Miller, at and ever since the death of his father, had been, and at the date of the decree was, seized of the property as a trustee to and for the use of Reddish and Ohlen, and not otherwise, and that David L. Miller's wife was not and had not been entitled to any dower or right of dower in or to the land, and that the judgment creditors of David L. Miller were not entitled to any lien to or claim upon or against the property by virtue of their judgments; and also that the moneys decreed to be paid and the bond and mortgage decreed to be given on account of purchase-money, were and should be personal assets in the hands of the administrator of John B. Miller, and should be by him administered as personal property in due and legal course of administration, and that he should pay to the administrators of the widow her distributive share thereof. That decree (it was made over ten years ago) was not appealed from by David L. Miller.

The only question presented for decision is whether, under the circumstances of the case, the contract of sale worked an equitable conversion of the land into money at the death of John B. Miller. That it would have done so, had the contract been en-

forced against the vendee, is indisputable and is not denied.
But the answering defendant insists that the failure to compel
specific performance prevents such result. That failure, however,
was due, not to the invalidity of the contract, but to the fact that
because of the length of time which had elapsed between the
time fixed by the contract (as extended) for the completion of
the purchase and the making of the decree for specific perform-
ance, it was inequitable to require the vendee to complete the
purchase, seeing that he had tendered himself ready to comply
with the requirements of the contract on his part at the time
fixed, and that in the meantime the property had fallen in value.
It may be remarked that the non-compliance upon the part of the
heir was not due to the widow. She did not refuse to release.
She was never asked to release. On the 13th of December, 1872,
she stated to her late husband's administrator, by letter, that she
was willing to release in case he should take judicial proceedings
to compel specific performance of the contract. It is proved
that on the very day on which under the contract (as extended)
the deed was to be delivered, her attorney stated to the attorney
of Reddish and Ohlen that she was willing to release upon such
a payment as would secure her rights, by which was meant pay-
ment to her husband's administrator, and not to David L. Miller.

A valid and binding contract of sale, such as a court of equity
will specifically enforce against an unwilling purchaser, operates
as a conversion. The cases in which the court has refused to
decree that a contract for sale works equitable conversion, are
those in which the contract was such as equity would not enforce.
The counsel of the answering defendant insists that the decision
in the case of *Teneick* v. *Flagg, 5 Dutch. 25*, is decisive of the
question under consideration, and is adverse to the claim of the
complainants. But it is to be observed that that was an action
at law. Mrs. Attie Teneick had agreed to convey land to James
Buckalew, and had received part of the purchase-money. He
refused to accept the deed because of the pendency of an action
of ejectment brought against Mrs. Teneick by other parties, to
obtain possession of the land. She delivered a deed for the
property to her agent, to be delivered by him to Buckalew upon

the favorable termination of the action of ejectment. She died before that termination was reached. By her death the action of ejectment abated, and it was not renewed. After her death her heirs conveyed the property to Buckalew in pursuance of her agreement, and the purchase-money was paid to her administrators. The husband of one of the heirs brought suit against the administrators to recover a share of the money. The court held that he was entitled to recover, on the ground that on the death of Mrs. Teneick the title descended to her heirs, the deed held in escrow passing no title, since the event on which it was to be delivered to Buckalew did not happen in the lifetime of the grantor, and at her death the deed ceased to have any validity. In the decision of the case the difference between the equitable rule and the legal rule was distinctly recognized by Justice Haines in his opinion. The cause was of course decided in the court of law upon the legal rule. Upon a full and careful consideration of the matter I reached the conclusion, in the suit for specific performance, that the contract worked a conversion. See *Miller's Admr.* v. *Miller, ubi supra.* The only new feature now presented is the fact that the appellate court has decided that specific performance ought not to have been decreed. The reason for that conclusion has already been stated. It was not the invalidity of the contract, nor any consideration which rendered the contract unenforceable in equity at the death of John B. Miller or at the time fixed by the contract for completing the purchase. The contract was one which, at the time fixed by it for completing the purchase, could have been enforced against the purchaser in equity, and it would have been enforced at that time on the application of the heir, with the consent of the widow, and she was willing to join him in enforcing it if he had been willing to secure to her her right in the purchase-money. In equity he ought to have enforced it. Equity regards that as done which ought to have been done. The doctrine of conversion is a reasonable one. In this case John B. Miller had made a sale of the property which, had he lived, he would have been able to enforce in equity, and which it is to be presumed he would have enforced. He had sold the property at a high price. It should

not be, and it is not in the power of the heir to defeat the right of the next of kin by his own unwillingness to carry out the contract. By force of the contract the vendor became, in equity, trustee of the property for the vendee, and the latter became trustee of the purchase-money for the former. It has been held that the equitable rights of the next of kin of the vendor are not defeated where the vendee, by his laches, after the death of the vendor, loses his right to specific performance, provided the contract was enforceable in equity at the death of the vendor; *Curre* v. *Bowyer*, reported in a note to *Farrar* v. *Earl of Winterton, 5 Beav. 6.* Where there is a contract for the sale of an estate, the estate is, in equity, considered as converted into personalty from the time of the contract, although the purchaser has an election to purchase or not, as he shall see fit. *Lawes* v. *Bennet, 1 Cox Ch. 167; Sugd. Vend. (8th Am. ed.) 187,* and cases cited. The sale in this case worked an equitable conversion of the land into money, and the widow was entitled, accordingly, to a distributive share of the purchase-money as part of the personal property of her husband.