JACKSON, *ex dem.* SCHENCK AND OTHERS, *against* WOOD.

In ancient patents, where the description of the land is vague, and the construction somewhat doubtful, the acts of the parties, the acts of government, and of those claiming under adjoining patents, are entitled to great weight in the location of the grant.

The south boundary of the *Rumbout* patent is an east and west line.

The south boundary of the *Rumbout* patent is the north boundary of the *Phillips* patent, and there is no *gore* or unpatented land between those patents.

THIS was an action of ejectment for lands in the town of *Fishkill*, in the county of *Dutchess.* The cause was tried before Mr. J. *Van Ness*, at the *Dutchess* circuit, in *August*, 1815.

The lessors of the plaintiff claimed under the *Rumbout*, or *Fishkill*, patent, dated the 17th of *October*, 1685, to *Francis Rumbout*, *Jacobus Kipp*, and *Stephanus Van Cortlandt.* The defendant, whose only right consisted in a possession of ten or twelve years continuance, resisted the plaintiff's claim, on the ground that the premises were situated in a *gore*, or piece of unpatented land alleged to lie between the *Rumbout* and *Phillips* patents.

By the *Rumbout* patent was granted "All that tract or parcel of land lying and being on the east side of *Hudson's* river, at the north side of the *Highlands*, beginning from the south side of a creek called the *Fishkill*, and, by the *Indians*, *Matteawan*, and from thence, northward, along said *Hudson's* river, 500 roods beyond the *Great Wappins* kill, called by the *Indians Mawenawasigh*, being the northerly bounds, and from thence into the woods 4 hours going, that is to say, 16 *English* miles; always keeping 500 roods distant from the north side of said *Great Wappinger's* creek, however, it runs, as also from the said *Fishkill* or creek, *Matteawan*, along the said *Fish* creek into the woods

at the foot of the said high hills, including all the reed or low-lands, at the south side of said creek, with an easterly line four hours going, that is to say, 16 *English* miles into the woods, and from thence northerly to the end of the four hours going, to wit, 16 *English* miles, on a line drawn at the north side of the 500 roods beyond the *Great Wappinger* creek, or kill, called *Mawena-wasigh.*" *Madame Britt* was the heir at law of *Francis Rum-bout.* *Francis Britt* was her heir at law, who, on the 10th of *May*, 1794, conveyed his part of the patent, which was the south third of the patent, to *Henry, Schenck*, of whom the lessors of the plaintiff are the heirs at law. The *Rumbout* patent is bounded on the south by the *Phillips* patent.

The patent to *Adolph Phillips*, dated the 17th of *June*, 1697, contained the following description : " A certain tract of land in our *Dutchess* county, situate, lying, and being, in the *Highlands,* on the east side of *Hudson's* river, beginning at a certain red cedar tree, marked, on the north side of the hill, commonly called *Anthony's Nose*, which is, likewise, the north bounds of Colonel *Stephanus Cortlandt's* land, or his manor of *Cortlandt*, and from thence bounded by the said *Hudson's* river, as the said river runs, northerly, until it comes to the creek, river, or run of water, commonly called and known by the name of the great *Fishkill*, to the northward and above the said *High-lands*, which is likewise the southward bounds of another tract of land belonging unto the said Colonel *Stephanus Cortlandt* and company, and so easterly along the said Colonel *Cortlandt's* line, and the south bounds of Colonel *Henry Beekman*, until it comes twenty miles, or until the division or partition line between our colony of *Connecticut*, and our said province, and easterly by the said division line, being bounded northerly and southerly by east and west lines, unto the said division line between our said colony of *Connecticut*, and this our province aforesaid, the whole being bounded westward by the said *Hudson's* river, northward by the land of Colonel *Cortlandt* and company, and the land of Colonel *Beekman*, eastward by the partition line between our colony of *Connecticut* and this our province, and southerly by the manor of *Cortlandt*, to the land of the said Colonel *Cortlandt*, including," &c.

The boundary between the patents to *Rumbout* and *Phillips* forms the boundary of the towns of *Fishkill* and *Phillips*. The farms in that part of the alleged *gore*, which was in the

vicinity of the premises in question, were held under titles derived from *Schenck*. In another part of the *gore* were persons who held merely by possession, without claim of title; and the *gore* had always been claimed by *Schenck* as being within his part of the *Rumbout* patent. In 1785 there was an arbitration between *Schenck* and many of the settlers, and, when it was decided, all who were parties to the arbitration took under *Schenck*, or moved off.

The case made for the opinion of the court contained a great deal of evidence relating to the actual location of the *Rumbout* patent, which it would be very difficult to render intelligible, and of which it is not thought necessary to attempt to give a statement. A verdict was taken for the plaintiff, subject to the opinion of the court.

*E. Williams*, and *J. Tallmadge*, for the plaintiff.

*Oakly*, contra.

THOMPSON, Ch. J., delivered the opinion of the court. If the *Rumbout* or *Fishkill* patent was now, for the first time, to receive a construction and location, I should very much incline to adopt that which has been given to it by the defendant's counsel. Upon this abstract question, however, the court do not mean to express any opinion. But in grants of such antiquity, where the description of the land is vague, and the construction somewhat doubtful, the acts of the parties, the acts of government, and of those claiming under adjoining patents, are entitled to great weight, in the location of the grant. It ought, also, to be noticed, in the outset, that the defendant in this action does not pretend to claim or set up any title to the premises in question, but rests entirely upon his possession, and that not of more than ten or twelve years continuance, and this possession held under the idea that it was not covered by any patent, but formed a part of a gore between the *Rumbout* and *Phillips* patent. This pretension must be laid out of view as altogether unfounded. *Phillips's* patent, which lies on the south, is expressly bounded on the south line of this patent, which makes it impossible that there should be any vacant land between the two patents. Construing the *Rumbout* patent, *per se*, there is nothing in it which requires the south bounds to be an east and west line.

The more natural construction would be that the southern boundary was formed by the *Fish creek*, and the lowlands on the south side thereof, without extending at all up the hills ; and this location would best satisfy the general description given to the land intended to be included in the patent, to wit, lands lying on the north side of the *Highlands ;* whereas, the south line, set up on the part of the plaintiff, extends several miles upon the hills, beyond the lowlands. But in the patent to *Phillips,* which was only twelve years later, the north line of the land granted is not only described as being the southward bounds of the *Rumbout* patent, but this line is expressly designated as an east and west line. This may be considered a cotemporaneous act of the government, showing their construction of the former grant ; but this, it is true, would not have been binding upon the patentee, if the interpretation was not warranted by the terms of the grant. That construction, however, has always been acquiesced in by the proprietors of the *Phillips* patent ; and no pretension ever appears to have been set up to a line north of the one as claimed by the lessors of the plaintiff. The suggestion of the defendant's counsel, that the *Phillips* patent might have been intentionally so located as to leave out a part of the land covered by it, does not appear to be warranted by any evidence in the case. And there is nothing, showing any act of the proprietors of the *Rumbout* patent, whereby they have recognised a line running along the foot of the hills as their south line. The various acts of the legislature, from the year 1737 to the present day, dividing this part of the country into precincts and towns, and in which the line, as now set up on the part of the plaintiff, has been recognised as the true line between the patents, is a strong corroboration of this construction. There are many other facts in the case which might be noticed, tending to the same conclusion. And, whatever doubts there might have been, originally, as to the true location of the south line of this patent, it is too late now to call it in question. It was not pretended, on the argument, that, if the *Rumbout* patent covered the premises in question, the plaintiff was entitled to recover. Judgment must, accordingly, be given for the plaintiff.

Judgment for the plaintiff.