JAMES C. RAPPELYEA *v.* STEPHEN P. RUSSELL.

The rule that an executor, if he have sufficient assets, is liable to a third person who, as an act of duty or necessity, has provided for the interment of the deceased, is the same in the case of an administrator; and a person who defrays the necessary funeral expenses of an intestate, though before letters of administration are granted, is entitled to be reimbursed out of the assets which come into the hands of the administrator.

An administrator, having assets in his hands, who refuses or neglects to pay the funeral expenses of the intestate, being requested to do so, is individually liable at the suit of the person who has been at the expense of the funeral.

The plaintiff, an undertaker, superintended the burial of an intestate having no friends or relations in the city. The defendant, as Public Administrator, afterwards took out letters, and having in his hands sufficient assets, refused to pay the plaintiff's bill,—*Held*, that he was individually liable therefor.

APPEAL by the plaintiff from a judgment of the Marine Court, at General Term, for the defendant, on a demurrer to the complaint.

The complaint alleged that plaintiff was a " general furnish-

Rappelyea v. Russell.

ing undertaker," doing business in the city of New York, and that the defendant was the Public Administrator in and for the said city of New York. That on or about the 9th day of June, 1860, one Anna Winchester, who had been, previous to that date, residing in said city, died intestate, and without having any friends and relations in said city. That thereupon the plaintiff, in his capacity as such undertaker, superintended the burial of the said Anna Winchester, and did and performed certain work, labor and services, furnished certain materials, and paid, laid out, and expended certain moneys, in effecting such burial, which said work, labor, and services so rendered, said materials so furnished, and moneys so paid, laid out, and expended, were of the value, reasonably worth, and amounted in the aggregate to the sum of one hundred and eighty-one dollars and ten cents. That said charge was reasonable and proper, and that the said funeral was, in every respect, suitable to the degree and circumstances in life of the said Anna Winchester. That on the 18th day of July, 1860, letters of administration were granted and issued to the defendant as such public administrator, by the Surrogate of the city and county of New York. That the defendant has in his hands, as administrator of the said Anna Winchester, assets to the amount of over six hundred dollars, in cash, which he has received and taken possession of as such administrator, and which is part of the estate of the said Anna Winchester, deceased. That while the said defendant had in his hands such assets, the plaintiff demanded payment from the defendant, &c.

The defendant demurred to the complaint, as not stating facts sufficient to constitute a cause of action. The demurrer was allowed, and the judgment being affirmed at the General Term of the Marine Court, the plaintiff appealed to this Court.

*George C. Barrett* (Barrett, Brinsmade & Barrett), for appellant.

I. The Public Administrator, on taking out letters, became invested with all the rights, powers, and liabilities of any other administrator; and may, in like manner, sue and be sued; and is

to be treated by creditors precisely the same as any other administrator.  3 Rev. Stat. 5th ed. 212.

II.  An executor or administrator, *with assets*, is liable upon an implied contract to pay the funeral expenses of his testator, suitable to his degree, although he does not give orders for it. Williams on Executors, vol. 2, 1623, 1624; *Rogers* v. *Price*, 3 Young & Jerv. 28; *Tugwell* v. *Hayman*, 3 Camp. 298; *Corner* v. *Shew*, 3 Meeson & Welsby, 350.

III.  And the executor or administrator is liable on such a contract *personally*, and not in his *representative character*.  Dayton on Surrogates, ed. of 1855, 286; *Brice* v. *Wilson*, 3 Neville & Manning, 512; *Corner* v. *Shew*, *Hayter* v. *Moat*, 2 Meeson & Welsby, 56.  (1.)  In *Corner* v. *Shew*, above cited, it was held, that the implied promise is on the part of the executor, personally, and not in his representative capacity.  And the Judge who delivered the opinion of the Court, then adds: "We are ALL of that opinion."  (2.)  It would seem, even, that the naming the defendant executor in the declaration is mere surplusage, and that he is liable *de bonis propriis*, if liable at all.  (3.)  The principle is laid down in the various cases to be, that as an express contract by the executor would *certainly* have bound him personally, the implied promise cannot place him in a different condition than if he made an express contract to the same effect.  (4.)  The rule is the same in the case of an administrator.  *Hayter* v. *Moat*, 2 Meeson & Welsby, 56.

*Charles A. May*, for respondent.

I.  An administrator is not *individually* or *personally* liable for funeral expenses of deceased where he has neither given nor adopted directions for the burial of the deceased.

II.  Administrators have no power to act in relation to the estates of the deceased persons until administration is granted, when they become vested with the property of deceased.

III.  It does not appear on the face of the complaint that administration was ever granted to the defendant on the estate of Anna Winchester, deceased.  The place and time administration was granted should be set forth.  *Rightmeyer* v. *Raymond*, 12 Wend. 51.

Rappelyea v. Russell.

IV. There are no facts stated in the complaint from which a contract can be implied between defendant and plaintiff for defendant to pay the claim sought to be recovered.

BY THE COURT.—DALY, F. J.—It is well settled that an executor, if he have sufficient assets, is liable upon an implied promise to a third person, who, as an act of duty or necessity, has provided for the interment of the deceased, if the funeral was conducted in a manner suitable to the testator's rank in life, and the charge is fair and reasonable. *Tugwell* v. *Hayman*, 3 Camp. 298; *Rogers* v. *Price*, 3 Young & J. 28; *Corner* v. *Shew*, 3 Mee. &. Wells. 350; *Brice* v. *Wilson*, 8 A. & E. 348, Note; *Hapgood* v. *Houghton*, 10 Pick, 154.

I do not understand that the law, as established by these cases, is founded upon anything peculiar to an executor as contra-distinguished from an administrator, but that it rests upon reasons which are as applicable in the case of the one as in that of the other. The burial of the dead is an act of public necessity. It is an imperative obligation thus strongly put by LORD DENMAN, in *Key* v. *Stewart*, 12 A. &. E. 773: "Every person dying in this country, and not within certain exclusions laid down by the ecclesiastical law, has a right to christian burial, and that implies the right to be carried from the place where his body lies to the parish cemetery. .. The common law casts upon some one the duty of carrying to the grave, decently covered, the dead body of any person dying in such a state of indigence as to leave no funds for that purpose... The individual under whose roof a poor person dies is bound to carry the body decently covered to the place of burial; he cannot keep him unburied, nor do anything which prevents christian burial; he cannot, therefore, cast him out, so as to expose the body to violation or to offend the feelings or endanger the health of the living; and for the same reason he cannot carry him uncovered to the grave."

Unless a man has left specific directions as to the mode of his interment, it may be assumed to be in consonance with his wishes, as it is conformable to the habits of society, that he should be buried in the manner which custom and usage have established. Funeral expenses, therefore, may be defrayed by an executor before probate (Toller's Law of Executors, 24;

2 Rev. Stat. 71, § 16), or by a stranger, if the necessity exists for his interference (Office and Duties of Executors, 174; Swinburne, 6 § 22 n.; *Rogers* v. *Price*), 3 Young & J. and this expense is a charge upon the estate of the deceased, which takes priority over every other. *Parker* v. *Lewis*, 2 Dev. 21; *White* v. *Stephens*, R. M. Charlton R. 56.

If a person defrays the necessary funeral expenses of an intestate before letters of administration are granted, he is entitled to be reimbursed out of the assets which come into the hands of the administrator. "Funeral expenses," says Chief Justice TAYLOR, in *Gregory* v. *Hooker*, Hawks R. 394, are not a debt, but properly a charge upon the estate, "and if an administrator having assets in his hands refuses or neglects to pay it after being requested to do so, he is individually liable at the suit of the person who has been at the expense of the funeral.

In *Arbat* v. *Churchland*, cited in *Rogers* v. *Price*, 3 Young & J., at page 32, an undertaker furnished the funeral of the intestate at the request of the surgeon who attended him, and administration being afterwards granted upon his estate, the undertaker arrested the administrator for the amount of his bill, but subsequently abandoned the suit. The administrator brought an action for false imprisonment which was not sustained, BEST, C. J., being of opinion that the original action was well brought, and that the undertaker might have recovered.

In *Gregory* v. *Hooker*, Hawks, 390 (N. Carolina), the question of the liability of an administrator for funeral expenses incurred without his knowledge was much discussed, and it was held that a person who had furnished certain articles for the funeral of the deceased, before administration granted, could not maintain an action against the administrator for their value, where no notice of the claim had been given before suit brought.

But afterwards in the same State it was decided, in *Parker* v. *Lewis*, 2 Dev. 21, that an action for funeral expenses might be maintained against an administrator. That they were a charge upon the assets independently of any promise by the administrator, and if suitable to the estate and degree of the deceased, were to be preferred to any other claim.

The only case relating to funeral expenses, in this State, appears to be *Myer* v. *Cole*, 12 Johns. 349 ; but all that was held in that case was that a count upon a promise by an executor to pay the costs and charges of the testator's funeral could not be joined with a count for work and labor and goods sold to the testator in his lifetime.

In the present case the plaintiff has averred that in the capacity of undertaker he superintended the burial of Anna Winchester, expending money and furnishing materials for her funeral ; that she died intestate, having no friends or relations in this city ; that the defendant, afterwards, as public administrator, took out letters of administration ; that he has assets in his hands more than sufficient to discharge the plaintiff's claim, and that having such assets in his hands, he was requested to pay the plaintiff's bill, and refused to do so. This is sufficient to maintain the action. The demurrer to the complaint was not well taken, and the judgment of the Court below was erroneous.

Judgment reversed.