Price *v*. Boyce, Administrator.

No. 1,046.

## PRICE *v*. BOYCE, ADMINISTRATOR.

RECOVERY.—*When the Rule of Secundum Allegata et Probata Does Not Apply.*—The doctrine that the plaintiff must recover *secundum allegata et probata*, if at all, does not debar a recovery where different paragraphs of complaint are filed, and evidence is introduced in support of all the paragraphs, but which is sufficient only to sustain one of such paragraphs.

DECEDENT'S ESTATE.—*Trustee of Decedent.*—*When Trust Ceases With Death.*—*Duty of Trustee to Pay Over to Administrator.*—Where a deceased, in his lifetime, delivered to his brother a certain sum of money for certain purposes, there being no direction for specific payment of debts after the death of the decedent, at decedent's death the trust ceased, and the decedent's brother was in duty bound to account to the administrator for any balance in his hands.

SAME.—*Trustee Accounting to Administrator.*—*Entitled to What Credits.*—In such case, the trustee, in accounting with the administrator, is entitled to credits for any debts paid in good faith, in the same manner'and to the same extent as an administrator or an executor *de son tort*.

From the Tipton Circuit Court.

*F. F. Moore*, for appellant.
*J. F. Elliott* and *W. C. Overton*, for appellee.

REINHARD, J.—The appellee sued the appellant, on a complaint in three paragraphs. The first was for money had and received by the appellant of the appellee's decedent. The second and third paragraphs set forth the circumstances under which the appellant received the money from the intestate, who was his brother, and contain the further averment that such intestate was at the time of the transaction of unsound mind. The appellant answered the first paragraph of the complaint by a general denial and plea of payment. He also filed an answer in three paragraphs to the second and third para-

graphs of the complaint. The first paragraph of this answer was a general denial, the second a plea of payment in accordance with the instruction of the decedent. The third paragraph admits receiving the money as charged in the complaint, but avers that it was given to the appellant by such decedent for certain specific purposes, to which appellant was to apply it, and to which he had applied it as directed; that he had received it in good faith, and expended it in the manner directed, without any knowledge or notice of the unsoundness of mind of the intestate. To this paragraph the court sustained a demurrer, and this ruling is the first error relied upon.

There was a general verdict for the appellee, and the jury, with said verdict, returned answers to interrogatories propounded to them, in which, among other things, they found that said intestate was, at the time of the transaction by which appellant received the money in controversy, of sound mind, and capable of managing his estate. Inasmuch as the verdict could, therefore, not be sustained upon the theory of said decedent's insanity, if it may be sustained upon any other theory to the exclusion of that of the insanity, the appellant was not harmed by the ruling.

It is admitted by appellee's counsel that the case must stand or fall upon the first paragraph of the complaint, and the issues joined upon the same. The second and third paragraphs of the complaint, and the answers and reply proceeding out of the same, may, therefore, be treated as being out of the record.

The appellant's counsel insist, however, that the appellee throughout the trial, until after the evidence in defense had been heard, proceeded upon the insanity theory, and only abandoned it when he found it was not sustained, and then resorted to the theory of appellant's disability as an administrator *de son tort.* The fact that

appellee had proceeded upon the insanity theory did not prevent him from making out his case under the first paragraph of the complaint. The doctrine that the plaintiff must recover *secundum allegata et probata*, if at all, does not stand in the way of a recovery where different paragraphs of complaint are filed, and evidence is introduced in support of all the paragraphs, but which is sufficient only to sustain one of such paragraphs. Nor can it be held that the court abused its discretion by permitting testimony to be given in rebuttal, which was, strictly speaking, proper only in chief. If, from a consideration of the whole evidence, it can be said that it fairly supports the first paragraph of the complaint, the judgment upon the verdict can not be disturbed.

The appellant has assigned the overruling of his motion for a new trial as error, and by such motion assails the sufficiency of the evidence to sustain the verdict. His contention is that to entitle the appellee to recover he must prove

1. That the money was received by appellant.

2. That it was received under circumstances creating an obligation to repay.

3. That a demand for repayment was made before suit.

The appellant's counsel, in their brief, concede that appellant received the money in controversy, and that a demand was made in January, 1891, about ten days after the intestate's death, and before the commencement of this action. The first and third propositions being conceded, therefore, it remains to ascertain the circumstances under which the appellant received the money, the manner in which any portion of it was expended by appellant, and what portion, if any, the appellant has failed properly to account for.

It is admitted, on behalf of appellant, that on the 2d

day of December, 1890, the intestate, then living at Cincinnati, Ohio, delivered to appellant the sum of $1,412.50 by his check on a certain bank in that city. It is claimed that at the time he received said funds appellant was directed by his brother to use the same for the latter's benefit as long as he should live, and after his death to pay out of it the expenses of last sickness and burial, and from the surplus, if any, to pay certain debts and obligations named.

It is claimed for appellant, however, that he accepted the money on the terms heretofore named, and applied it to the use of his brother until the latter's death, which occurred on the 16th day of January, 1891; that he paid the expenses of last sickness and burial of the intestate, and the specific debts and obligations he was directed to pay, with the exception of one item, which was the balance remaining in his hands after the payment of specific debts and obligations, and which balance he was directed by his brother to pay to the latter's son for services rendered, but which had not been paid by him at the time of the demand and suit.

The contention of appellant is that by the transfer to him of the funds in question the intestate constituted the appellant a trustee, and that he has strictly executed the trust, as far as he has been able to do so, by paying out the fund according to the specific directions of the deceased, and that whatever balance remains in his hands belongs to the intestate's son, who is a *cestui que trust*, and that, therefore, the appellee has no just claim to the same. The appellee, on the other hand, contends that the money was delivered to appellant as a mere agent of the intestate, without any interest in the trust estate; that the agency ceased with the death of such intestate; and that any sums paid out by the appellant since then, with the exception of such portions as would have been

proper payment if made by the administrator of the estate, can not be charged to the estate, and must be repaid by the appellant.

The appellee, to sustain his complaint, introduced evidence tending to show that the intestate gave to the appellant his check, upon which the latter drew the money. Mrs. Price, the wife of the intestate, testified that she accompanied the appellant to the bank and saw him receive the money, and that he told her that her husband let him have the money for the purpose of making more money for him, and to let him and his wife have money when they wanted it; that it would be better for the intestate to let appellant have the money; that appellant would let them (the intestate and his wife) have money whenever they wanted it, and that appellant could send them a draft whenever they wanted money, or would let him (appellant) know, and that it would never do to let intestate keep the money, as he would give all away to the girls. She also testified that appellant told her, in substance, that even if he were disposed to keep it they could recover it from him, and that he said nothing about having received it with directions to make any specific payments with or other disposition of the money.

The appellant's evidence tends to prove that he received the money from his brother, with directions to pay out of it the latter's expenses of living, expenses of last illness and burial, to pay his brother Frank a debt due him from the intestate, to pay one Mary Stockton, a sister of the deceased, liberally for staying with him and caring for him, and to pay any sum remaining to the son of the intestate, and that appellant had made all of the above named payments, except that which was to go to the decedent's son.

These facts (except the proof of payments) were shown mostly, if not altogether, by the testimony of Mary Stock-

ton, one of the principal beneficiaries under the alleged agreement between the deceased and the appellant. There were other circumstances proved which tended to show that the deceased had made no arrangements with the appellant to pay the debt to his brother Frank.

The jury found, in their answers to interrogatories, in substance, that the money was received by the appellant from his brother under the agreement that appellant was to pay out of it the expenses of living and care during deceased's lifetime and his funeral expenses. The amount received by appellant was $1,412.50. The verdict against appellant was for $725. This left $687.50, which, the jury must have found, was properly paid out by the appellant.

We think there was evidence from which the jury had the right to infer that there was no arrangement between the decedent and the appellant, by which the latter was authorized to pay any specific debts beyond the reasonable expenses for care and support of decedent, and we think the jury had the right, also, under the direction of the court, to allow the appellant for any payments he made in discharge of *bona fide* claims for expenses of last sickness and funeral.

Doubtless, a contract creating a trust may be performed in whole or in part after the death of the donor or settlor. But, upon the theory of the appellee's case, there was nothing to be done by appellant after the death of the intestate, and we can not say that there is no evidence, whatever, which sustains this theory. If no directions were given for specific payments of debts after the death of the intestate, then the trust ceased with his death, and the appellant was in duty bound to account for any balance in his hands, to the administrator. While the evidence is meager upon this point, and not as satisfactory as we could wish, we can not say that there was such a

lack of proof of any essential fact as to authorize us to adjudge a reversal of the judgment for that reason.

Objections are made to certain instructions given by the court of its own motion, and the refusal of the court to give others requested by the appellant. The instructions relate, in part, to the alleged insanity of the appellee's intestate, and in view of the finding of the jury that such intestate was of sound mind at the time the transaction took place by which the appellant claims to have been created a trustee, the ruling of the court in this regard must be deemed as harmless error, if .error at all.

The remaining portions of the instructions given and those refused relate to the question of trust, and whether or not the trust, if any, was revoked by the death of the intestate. The effect of the instructions given was to charge the jury that the trust ceased, at all events, with Pendleton P. Price's death, and that it was the duty of appellant, when apprised of such death, and upon demand made, to turn over any balance then in his hands, to the appellee, as administrator of the estate of said decedent, but that the appellant would be entitled to a credit for any amounts paid by him to the same extent that an administrator or executor would be entitled to such credits, if the payments had been made by such administrator or executor. By the instructions given, and the refusal to give those asked for upon the subject of the trust, the court ignored the theory of the appellant that a trust was, in fact, perfectly created under the terms relied upon by him. Assuming that the appellant was entitled to a presentation of the law to the jury, predicated upon the theory of his case, it still remains to be seen whether he was harmed by the ruling of the court by the instructions given and by the refusal of those asked for.

The jury found, in their answers to interrogatories, that the intestate, Pendleton P. Price, turned over to the appellant the amount of money named in the complaint, to be used by appellant for the care, support and maintenance of said Price during his lifetime, payment of expenses of last sickness and funeral, but not for the payment of any specific indebtedness, or the payment of any remainder to the intestate's son. This being true, appellant was in duty bound to render an account to the administrator on demand, and to pay over to him any sums remaining in his hands at that time, but was properly entitled to credits for any debts paid in good faith, in the same manner and to the same extent of an administrator or executor *de son tort.*

The appellant, if the facts were as found by the jury, could not have been benefited by the instructions refused, nor harmed by those given. There was, therefore, no available error in the giving or refusal of instructions. Had there been no special findings to indicate the theory upon which the verdict was based, a different question would have been presented.

The appellant further insists that the damages are excessive. After a careful examination of the evidence, we do not think the appellant has any just ground for complaint on account of excessive recovery. We think he received credit for all he was entitled to under the special findings.

The appellant's motion in arrest of judgment was overruled. There was no error in this. The first paragraph of the complaint was good, even as against a demurrer. The special findings affirmatively show that the verdict was founded upon this paragraph alone. Whether the other paragraphs were good or bad, was immaterial.

We have examined and disposed of all the questions presented by the record and have not been able to find any reversible error.

Judgment affirmed.

Filed March 9, 1894; petition for a rehearing overruled May 29, 1894.