WILLS—SPECIFIC LEGACY—RIGHTS OF LEGATEES—CLAIM AGAINST ESTATE.

> A decedent had expressed her wish to be buried in her best dress. Those in charge of the funeral selected one of her gowns for the purpose, and it was thereafter found that the gown selected had been especially bequeathed by the decedent to the wife of her executor. *Held,* that the value should be paid to the legatee out of the estate as an item of the funeral expenses.

In the matter of the final accounting of the executors of Mary H. Pullen, deceased. Decree rendered.

Sanborn & Sanborn, for executors.
Shepard & Houghton, for Mary P. & Sarah Kissam.
Coleman E. Kissam, for Louisa Kissam.
Gustav Lange, Jr., for Rose C. Thomas.
Paul Armitage, for Robert, Lillian, and Frances Van Dyke.

CHURCH, S. Objection is made to an item of the executors' account which recites that $500 was paid to a Mrs. Delatour for the expense of a funeral robe for the deceased. The question of law arising upon this objection is unique, and the questions of fact on which it is founded are so very singular that they merit a careful recital. It appears that the testatrix, who was a woman of considerable means, had made a will in which the persons who are now accounting were named as executors. So far as is disclosed, no one other than the draftsman of the will and the deceased was aware of its contents, or of the fact that the persons who subsequently acted as executors were nominated therein. Mrs. Delatour, the wife of the executor Delatour, had been for a number of years a very close and dear friend of the deceased, living near to her. At the time of the death of the deceased there was delivered to her a letter in the handwriting of the testatrix, requesting Mrs. Delatour to see that certain wishes of the deceased in relation to her funeral and burial were carried out. Among such wishes was a request on the part of the testatrix that she should be laid out in her "best dress." Among the various gowns of the testatrix there was one which, by reason of the character of its materials and trimmings and of the dressmaker who made it, was concededly the best and most expensive in her wardrobe. This dress was of black velvet, and the only black velvet gown owned by her. Ac-

cordingly, in obedience to the wishes expressed in the letter, the testatrix was laid out in this black velvet gown and buried in it. After the burial the will was produced, and an examination disclosed that, among the various specific legacies given to Mrs. Delatour by the testatrix, was the black velvet gown, the "best dress" in the wardrobe of the testatrix, and the one in which she was buried. The executors have taken the position, therefore, that, as Mrs. Delatour was entitled to such gown, and as by using the same the estate had not been put to the expense of buying a burial robe, they are justified in paying to her the value of the gown and charging its cost as a burial expense. They have accordingly paid her the sum of $500, which, it is contended, was its value. To this item objection is made by various persons interested in the estate.

In the consideration of this very interesting question I have not only examined the natural and direct propositions involved, but have also reviewed such other principles of law having a bearing thereon which might, in my judgment, be of assistance in leading to a proper determination. Among the principles which could be invoked in this case was the one which recognized the right of a person during his life to create a trust which would provide for his suitable burial, and that such a trust would be superior to any testamentary provision contained in his will. 11 Am. & Eng. Ency. Law (2d Ed.) 835; Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, 52 Am. Rep. 41; Matter of Hildebrand, 1 Misc. Rep. 245, 23 N. Y. Supp. 148; Price v. Boyce, 10 Ind. App. 145, 36 N. E. 766. The evidence, as submitted originally, was inconclusive; and, while some circumstances pointed to the creation of such a trust, it was not definitely established. For that reason I requested the parties to give further evidence, for the purpose of accurately determining these facts. By this additional testimony it appears that the testatrix made no arrangement nor any requests in relation to her funeral, but simply stated to Mrs. Delatour that upon her death a letter, which was in the possession of her maid, would be given to Mrs. Delatour. It also appears that, although the latter was in frequent attendance upon her and was at her house almost constantly, the testatrix remained in possession of her entire estate, and that in no way could it be said that any portion of the same was set apart, or given to Mrs. Delatour in trust, for the purpose of the burial of the deceased. With this question definitely settled, perhaps the conclusions which I have reached in this case will be more clearly demonstrated if we look for a brief moment at the underlying principles controlling the same.

The primary obligation of the effects of a deceased person is that they shall be applied, in the first instance, for the purpose of securing a decent and appropriate burial for the remains of the deceased. This rule, which manifestly finds its sanction in public policy, has existed from the earliest times; and, in addition, the Legislature has established, by the provisions of section 2729 of the Code of Civil Procedure, a summary method by which an undertaker, or other person who has defrayed such funeral expenses, may obtain reimbursement from the estate. In this connection it has been held that, when subse-

quent examination as to the wealth and property of the decedent discloses that the funeral expenses were out of proportion to the extent of the estate, but were incurred in good faith in accordance with the mode of life followed by the decedent in his lifetime, they should nevertheless be paid. Matter of Hildebrand, 1 Misc. Rep. 245, 23 N. Y. Supp. 148; Rappelyea v. Russell, 1 Daly, 214; Matter of Rooney, 3 Redf. Sur. 15. In furtherance of this doctrine and in natural sequence thereto there follows the proposition that, as it is always manifestly impossible, within the short time which must necessarily elapse between the death and the burial, for the executors of a will to receive their formal authority from the court, or for proper letters of administration to be issued, where the relatives of the decedent or those persons who were in attendance upon him took charge of his burial and expended moneys, they were entitled to be repaid by the estate for such sums as were appropriately and in good faith expended. It also follows that the person supplying articles for the funeral could either recover their value directly from the person who had taken charge of such funeral and ordered them or from the representatives of the estate. With these principles in mind, let us make a careful examination of the facts of this particular case.

It appears that shortly after the death of the deceased Mrs. Delatour was given the letter in question. This letter she immediately exhibited to certain relatives and legatees of the testatrix, who came to the house when summoned by the news of her death. It was mutually determined by all present to carry out the wishes of the deceased as outlined in the letter, and, it being generally conceded by all these persons that the black velvet gown referred to was the best of her dresses, she was accordingly laid out in it, thus accomplishing her desire. In view of the wealth and manner of life of the deceased, if these parties, at her request, had had a robe made for the express purpose of her burial, at an expense of $500, I should hold that this was a proper expenditure and that the executors were justified in incurring it. If this had been done, such expense would have been borne by the residuary legatees (the persons who are objecting to this account), because the expense as charged falls on them. The allowance of this item, therefore, although incurred in an unusual manner, does not make them bear any other or greater burden than is legitimate and proper.

The gift of the black velvet gown in question was, undoubtedly, a specific legacy; and, being in existence at the death of the testatrix, the title thereto immediately vested in the specific legatee. Although a will does not become practically operative until it is admitted to probate, yet, when it is proved, its provisions are presumed to take effect instantly upon the death of the testator. 18 Am. & Eng. Ency. of Law (2d Ed.) 714, 715; Humphry v. Robinson, 52 Hun, 200, 5 N. Y. Supp. 164; Proctor v. Robinson, 35 Mich. 284. That being so, it follows that, immediately upon the death of the testatrix herein, the black velvet gown, or "best dress," by whichever name it may be designated, became the property of Mrs. Delatour. It has also been held that a specific legatee may maintain an action directly against

any person who has converted or destroyed the subject of the specific
bequest subsequent to the death of the testator. From these principles
it is clear that, if the gown in question had been stolen (as it appears
certain other property of the deceased was stolen), Mrs. Delatour
could bring an action against the person who had thus improperly
deprived her of the same.

But the cause of action to recover a specific legacy is not neces-
sarily confined to the legatee who is entitled to the same; and the ex-
ecutor of the deceased could maintain, in his official capacity, a suit
against any person who had wrongfully converted the subject of such
specific legacy. And it naturally follows, therefore, that, if the ex-
ecutor had instituted an action against the person or persons who,
having taken charge of the burial of the deceased, had used the robe
in question, it would have been a complete defense to the action if such
person or persons showed that, in the use of such articles, their conduct
had been reasonable and proper in proportion to the estate of the de-
ceased and in compliance with the wishes of the deceased. That being
so, it is evident that, if this black dress had been taken by any repre-
sentative of the deceased or other person who had charge of the funeral
arrangements and used as it was used, Mrs. Delatour could have main-
tained an action to recover the value of this specific bequest, and they,
in turn, could have recovered its value from the estate. As the law
does not favor a multiplicity of suits or a circuitous course of action,
the executors in this case are justified in paying to Mrs. Delatour a
proper sum for the taking of her property in place of their purchase
of a suitable burial garment for the deceased.

The correctness of this may be illustrated: Suppose the deceased
had been an undertaker, and in arranging for the burial it had ap-
peared that in such business there was in stock a casket which, in
size and appointment, was suitable for use in the burial of the deceas-
ed, and that, therefore, it had been used in his interment, instead of
one purchased from some other undertaker, and that subsequently the
will showed that the entire business, including such casket, had been
given to some person as a specific legacy; can there be any doubt that
such legatee could recover the value of such casket from the ex-
ecutors? The perfect good faith of Mrs. Delatour and of the other
persons concerned in this transaction is plainly apparent. There could
be no misconception as to the wishes of the testatrix, and all of the
persons interested were evidently desirous of seeing them carried
out. They were ignorant of the provisions of the will and the effect
of their action upon the estate. It is, therefore, manifestly apparent
that, in taking the course they did, they intended no injury to any
person who would benefit under the will, nor did they seek to impose
any undue burden on the residuary legatees. They were simply en-
deavoring to secure such a burial as would be prompted by a respect-
ful deference to the wishes of their departed relative.

In this connection, it seems to me, the contestants do not give a
proper consideration to the letter of the testatrix. Being a mere let-
ter, with no indication that it is to have the effect of a testamentary
document, it is apparent it cannot for a moment be regarded as a will.

Hence it certainly cannot nullify the provision of the will giving this dress to Mrs. Delatour. In my opinion the latter has no legal effect, except as evidence of the good faith of the persons taking charge of the funeral arrangements in using the property of the testatrix in accordance with her wishes. It cannot be said that because Mrs. Delatour was the person to whom the letter was addressed, and because she, with the other persons interested, acquiesced in the use of this velvet gown, she is in any way estopped thereby. The primary doctrine of estoppel is that the person sought to be estopped should know his rights. The evidence in this case shows, beyond question, the fact of the entire ignorance of Mrs. Delatour and of the other persons concerned regarding the provision of the will in relation to this dress. She cannot be regarded, therefore, as having in any way done anything which would indicate an intention on her part, as the owner of the dress, to have it devoted to the use to which it was put.

There now remains for consideration the sole question as to the proper valuation to be placed upon the gown in question. The contestant asserts that, being a second-hand garment, its value is comparatively slight. If I appreciate correctly the evidence on the part of the executors, it is that the materials composing the dress, irrespective of whether they are in the form of a dress or not, are worth a sum equal to that which was paid therefor. Details are given as to the number of yards of material therein, with the cost value of the same, and the cost of the silk lining, jet ornaments, and other trimmings, which were in as good a condition as if the gown had never been worn. The evidence of the contestants that this dress is practically worth only $40 more than the cost of workmanship, does not, in my judgment, seem reasonable or proper. I conclude, therefore, that the valuation placed upon the gown in the executors' account is an appropriate figure, and overrule the objections thereto.

Let findings and decree be presented accordingly.

Decreed accordingly.