(Surrogate's Court, Cattaraugus County. February, 1903.)

**1. WILLS—CONSTRUCTION.**

Testator gave his executors discretionary power of sale, and devised to his widow certain real estate absolutely. By another item he gave her in lieu of dower and distribution one-half of his personalty absolutely, and the use of such portion of the other half as he had not otherwise disposed of by the will, and made legacies out of the proceeds of the sale of his real estate. *Held*, that the widow was not, under such other item, entitled to another share in the proceeds of the real estate as personalty, because it had necessarily been converted into personalty to pay the legacies charged upon it.

**2. SAME.**

Where testator gives one-half of his personalty to his widow in lieu of dower and distribution, though her legacy exceeds in value the right she relinquished, she is entitled, as against the general and residuary legatees, to one-half of the personalty, after deducting the debts and expenses of administration.

**3. EXECUTOR—INTEREST—ACCOUNTING.**

An executor closed an estate with reasonable diligence, and accounted for all the interest received. There was no evidence of fraud, or that he used the money for his own purposes. *Held*, that he could not be charged with any more interest, where there was no evidence that he could have invested the money to better advantage.

**4. SAME—BURIAL LOT.**

An executrix cannot be allowed the expense of procuring a burial lot and monument, where testator in his lifetime provided one himself.

**5. WITNESS—COMPETENCY—TRANSACTION WITH DECEDENT.**

The surviving executor examined an alleged debtor of the testator to show liability and surcharge the account of the administrator of the widow and former executrix of the will with the amount of the debt. *Held*, that the witness was entitled to give the whole transaction with the testator, in order to show that he was not indebted to him.

Proceeding on judicial settlement of the estate of William Woodbury, deceased. Objections to account sustained in part.

Thrasher & Leonard, for executor, Benjamin P. Woodbury.

Walter Record, for administrator of estate of Marjorie J. Woodbury, deceased.

DAVIE, S. The testator died February 12, 1897, leaving, him surviving, his widow, Marjorie J. Woodbury, and no descendants, and leaving a will, dated July 12, 1893, which was admitted to probate

March 12, 1897. The widow was named as executrix, and Benjamin P. Woodbury as executor, his appointment, however, not to take effect until the death of the executrix. Letters testamentary were issued to the widow upon the probate of the will, and she continued in the execution of such trust up to the time of her decease, April 15, 1900, having had no judicial settlement of her accounts. Letters were thereupon issued to Benjamin P. Woodbury, the other executor. Letters of administration on the estate of Marjorie J. Woodbury were issued to Daniel P. Barnard May 16, 1900. The estate of the widow principally consists of her interest under the will of her husband. The executor presents his accounts for judicial settlement, and objections are filed thereto by the administrator of the widow's estate. The administrator also presents an account of her proceedings as such executrix, the same being objected to by the executor, Benjamin P. Woodbury. The issues raised by the objections filed to both accounts were by consent tried together. The contest relates entirely to the relative rights of Benjamin P. Woodbury as a legatee under the will of the testator and those of the administrator of the estate of the widow, she being also a legatee under the will.

The testator died possessed of personal property consisting mainly of money securities of the value of about $13,000, and seised of real estate of the value of $7,500.

By the first item of the will an undivided one-third part of testator's residence in the village of Gowanda was devised to the widow absolutely, and the use of the other two-thirds during her life. By the second item of the will the testator bequeathed to his widow one-half of his household furniture, goods, and valuables in the house not otherwise specifically disposed of absolutely, and the use of the other one-half during her life. The third item is as follows:

"I give and bequeath to my wife one-half of my personal estate in lieu of dower and distribution, and the use of the other one-half during her life, except such as is herein otherwise disposed of."

By the fourth item the testator bequeathed to Benjamin P. Woodbury the sum of $3,000, with interest thereon, six months after the death of the testator, "to be paid soon as it can be out of and by the sale of real estate." By the fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth items bequests are given to various persons, including one of $480 to one brother and $500 to another brother, aggregating in all the sum of $4,420. Then follows this provision:

"The foregoing legacies beginning with the fourth are to be paid from the avails of the sale of real estate soon as they can be without sacrifice, in the order that they are numbered; and in case any remain unpaid at the decease of Mrs. Woodbury, such shall be due and demandable six months thereafter, and none to draw interest until they become payable. And I do further provide that the payment of any of the legacies herein may be made in whole or in part by the executrix turning out and assigning any securities on real estate becoming due within three years after such legacies may be demanded, which are considered good securities; and when the sale of my real estate shall be made, it shall be free from any claim by legatees."

Then follows a bequest of $490 to the Methodist Episcopal Church, several specific legacies to various persons, and the residuary clause, as follows:

"All the rest and residue of my estate and property not herein disposed of, I give, devise and bequeath to Benjamin P. Woodbury."

The executors are not expressly directed to sell the real estate, but they are given the power so to do in the following terms: "With full power to sell, transfer and convey any and all of my property real or personal, and do all things necessary to carry out the provisions of this will in settling the estate." The only other provision of the will to which it is necessary to refer in this connection is the following statement in the fifteenth item:

"And I hope she [the widow] will lose no time in making her will, and also dispose of her property when and where it will give her the greatest satisfaction;" and the following statement in the sixteenth item: "And I hereby confer on him [Benjamin P. Woodbury] and his children all interest, rights and privileges that would vest in him and them if he was my lineal heir; but this is not to affect the provisions of this will. Mrs. Woodbury is to have the use of the real estate until it is sold."

It is claimed on behalf of the representative of the widow's estate that the will, by its terms, operates as an equitable conversion of the real estate, and that the bequest to the widow in the third item of the will applies not only to the personal estate, but also to the proceeds derived from the sale of the real estate.

It may with considerable force be urged that the will does operate as an equitable conversion of that portion of the realty not specifically devised, while a mere power of sale does not so operate; and, while the question of equitable conversion is often one of intent (Bisph. Eq. [4th Ed.] 374; 3 Pom. Eq. Juris. 127; Am. & Eng. Encyc. of Law [1st Ed.] 665), yet an express direction to sell, or a power of sale coupled with such testamentary provisions as render it necessary to exercise such power in order to effectuate the testator's intention, operates as an equitable conversion (Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498; Savage v. Burnham, 17 N. Y. 561–569; Hatch v. Bassett, 52 N. Y. 359; Fisher v. Banta, 66 N. Y. 468; Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367, 15 Am. St. Rep. 400). The fact that testator in this case makes bequests to the extent of nearly the full value of his real estate, directing their payment out of the proceeds of the sale of such real estate, coupled with the power of sale on part of the executors, should quite likely be held to operate as an equitable conversion, if that question were necessarily involved. The important consideration, however, is not the matter of equitable conversion, but is that of the testator's intention as to whether or not he designed that the beneficial provisions of the will in favor of the widow should be limited to his personal estate and the realty specifically devised to her, or to extend to his entire estate, both real and personal.

The legatee, Benjamin P. Woodbury, was a nephew of the widow, but of no relation by consanguinity to the testator; yet practically the relation of parent and child had always existed between this legatee and the testator, he becoming a member of testator's family in his infancy, and assuming his name. It was apparently the design of the testator to divide the bulk of the estate in an equitable manner between the widow and Benjamin P. Woodbury. The testator

was a lawyer of ability and extensive experience. He drew his own will while in full possession of his mental faculties. As a lawyer, he fully comprehended the technical and legal meaning of the terms "personal property" and "real estate." When, therefore, the testator devised to his widow certain real estate absolutely, and bequeathed to her one-half of his personal estate and the use of the other one-half, not otherwise disposed of, for life, in lieu of dower and distribution, following such provision by other bequests to be paid from the proceeds of the sale of his real estate to practically the full extent of the value of such real estate, it would be unreasonable and unwarranted to hold that the testator designed that the widow should share in the proceeds of such realty simply because the same, as a necessary incident to the payment of the legacies charged thereon, was equitably converted. It is entirely apparent that the testator did intend that the widow's interest, aside from the real estate specifically devised to her, should be limited to the personal property possessed by him at the time of his death.

The next question arises: What were the rights of the widow in the personalty under the provisions of this will? The claims of the parties in this regard are widely divergent; the representative of the widow's estate insisting that under the third item of the will he is entitled to the full one-half of such personalty absolutely; on the contrary, the accounting executor, in consequence of the provisions of the will to the effect that the payments of any of the legacies might be made by assigning securities on real estate, asserts that he was authorized to pay such legacies out of the general corpus of the personal estate, and that the widow was entitled to only one-half of what might remain. He has accordingly paid all such legacies from the personal property. This bequest to the widow was expressly declared to be in lieu of dower and distribution. Such a bequest is more than a mere gratuity. It is in the nature of a contract to purchase. The widow was required to make an election between her right to be endowed of the lands of her husband and the pecuniary provisions made for her by the will (1 Rev. St. [1st Ed.] p. 741, pt. 2, c. 1, tit. 3, § 13; Real Prop. Law, § 180, Rev. St. [9th Ed.] p. 3571), and, having failed within one year after the death of her husband to enter upon the lands to be assigned to her for her dower, or to commence proceedings for the recovery or assignment thereof, she is deemed to have accepted such beneficiary provisions (1 Rev. St. [1st Ed.] p. 742, pt. 2, c. 1, tit. 3, § 14; Real Prop. Law, § 181, Rev. St. [9th Ed.] p. 3571).

The law is well settled that where a legacy is given in consideration of the relinquishment by the legatee of some subsisting right or interest—as to a creditor in satisfaction of a debt, or to a wife in lieu of dower—such legacy is entitled to priority over general legacies, which are mere bounties, for in such cases the legatee stands in the situation of a purchaser, and not a mere volunteer. Williamson v. Williamson, 6 Paige, 298; Matter of Dolan, 4 Redf. Sur. 511; Isenhart v. Brown, 1 Edw. Ch. 411; Blower v. Morret, 2 Ves. Sr. 421; 13 Am. & Eng. Encyc. of Law, 136. Such is the rule, though the value of the legacy greatly exceeds the value of the rights

relinquished. Matter of Dolan, supra; Heath v. Dendy, 1 Russ. 244; Farnum v. Bascom, 122 Mass. 282; Reed v. Reed, 9 Watts, 263; Howard v. Francis, 30 N. J. Eq. 444; Warren v. Morris, 4 Del. Ch. 289. In the opinion in the case of Williamson v. Williamson, above cited, the chancellor says:

"Indeed, a legacy to the widow in lieu of dower is viewed in a more favorable light than a legacy to a child, the widow taking the bequest as an equivalent for her relinquishment of a right, and the child taking it as a mere bounty of the testator. For this reason the legacy of the wife given in lieu of dower does not abate ratably with others, if the fund is insufficient to satisfy all."

In the case of Isenhart v. Brown, above cited, the vice chancellor says:

"The legacies given to her by this will are partly specific and partly pecuniary, and they constitute the provision made for her by the testator in lieu of her right of dower in his estate. It is the price put by the testator himself upon that right, and which she is at liberty to accept. Her relinquishment of dower forms a valuable consideration for the testamentary gifts. In this point of view she becomes a purchaser of the property left to her by the will. So, on the other hand, the husband offers a price for his wife's legal right of dower which he proposes to extinguish, and, if she agrees to the terms, she relinquishes it, and is entitled to the price. It is, therefore, a matter of convention or contract between them; and what she thus becomes entitled to receive, is not by way of bounty, like other general bequests: but as purchase money for what she relinquishes and which, consequently, must be paid in preference to other legacies—they being merely voluntary. This doctrine is very clearly stated in the 1st volume of Roper on Legacies, 297; and it is a doctrine well supported by judicial authority."

Reference to these authorities clearly shows that it is the policy of the law to scrupulously guard a bequest to a widow in lieu of dower against diminution so long as there may be funds of the estate out of which the same may be paid. The fact that in this case the testator has given the widow the use of all of his real estate until the same might be sold does not change the situation; for, having accepted the pecuniary provisions under the will, she absolutely loses her dower interest in all of her husband's real estate, and such real estate becomes liable for the payment of the legacies charged upon it free from any claim upon her part. The vice chancellor, in the Isenhart Case, after reviewing the English decisions bearing upon the question, says:

"Considering all these cases, I am bound to regard the law as settled that, under circumstances like the present, a widow is entitled, after payment of the debts, to the whole provision which the husband chooses to make for her by his will, in lieu of dower, in preference to all other legatees, who are consequently to be postponed where there is a deficiency of assets. Of course, the debts must be paid before she can be entitled even to specific legacies; but these debts may be paid out of other parts of the estate, in exoneration of what is specifically bequeathed or devised."

These decisions lead to the conclusion that the widow became entitled, under the will of the testator, to the full one-half of the personal estate owned by the testator at the time of his death, after payment of debts and expenses of administration.

The executor, Benjamin P. Woodbury, in the account filed by him, does not charge himself with any interest derived from the personal

estate which came into his hands, and none of the objections made to his accounts relate to this omission. It was conceded on the trial that the amount which the executor had actually received as interest during his administration of the estate was the sum of $309.30, and that his account should be surcharged to that extent. The administrator of the widow's estate contends that a larger amount should have been received by proper management of the funds of the estate, and that the executor should be charged with a greater sum for interest. While the liability of an executor for interest must depend largely upon the particular circumstances of each individual case, yet there are certain well-defined principles applicable thereto. The rule is elementary that all profits derived directly or indirectly from the assets of the estate, either spontaneously or through the act of the representative, will be charged against him in the final settlement of the estate. 7 Am. & Eng. Encyc. of Law, 426.

In the case of Dunscomb v. Dunscomb, 1 Johns. Ch. 508, 7 Am. Dec. 504, it was said:

"The rule is settled that executors and all other trustees are chargeable with interest if they have made use of the money themselves, or have been negligent, either in not paying over the money or in not loaning or investing it so as to render it productive."

This rule has been followed in a long line of well-considered cases. Brown v. Rickets, 4 Johns. Ch. 303, 8 Am. Dec. 567; Manning v. Manning, 1 Johns. Ch. 533; Schieffelin v. Stewart, Id. 620, 7 Am. Dec. 507; Mumford v. Murray, 6 Johns. Ch. 1; Kellett v. Rathbun, 4 Paige, 102. In the case of Price v. Holman, 135 N. Y. 133, 32 N. E. 127, it is said:

"The law exacts of a trustee fidelity to his trust. If he is guilty of a fraud, or the mismanagement of the trust fund, or is guilty of a breach of trust, or has used the trust funds for his own purposes and made a profit therefrom, he may be compelled to pay interest."

The personal estate coming into the hands of this executor consisted principally of money securities and cash on deposit in two different banks. Soon after his appointment he began making payments upon the debts of the testator and upon the bequests provided for in his will. The amount above specified as interest covers all interest actually received by him. He can be charged with no further sum except upon the theory that he has been guilty of negligence in not investing the moneys of the estate in such a manner as to be more productive. No evidence is produced to justify a finding of negligence of this character. Directly after his appointment he began closing the affairs of the estate, and, so far as it is made to appear, proceeded with reasonable diligence up to the time of the filing of his petition for a judicial settlement herein. An application of the principles enunciated in the decisions above cited will not justify any greater charge of interest against this executor than the amount above stated.

The other objections filed to the executor's account are disposed of by the findings herewith submitted, and need not be more particularly referred to herein. There are two items in the account of the

administrator of the proceedings of the widow, as executrix, which are objected to. They are, "Monument, $714.00;" "Lot, cemetery, $80.00." The circumstances upon which such objections are predicated are substantially these: After the death of the testator, his widow, the executrix, purchased a lot in the cemetery in the village of Gowanda, paying therefor the sum of $80, and taking a deed for the same in her own name and in the name of Benjamin P. Woodbury. The testator was buried in this lot. The executrix also caused a monument to be erected thereon at an expense of $714. Many years ago David Woodbury, the father of the testator, acquired title from the cemetery association to a burial lot in the village of Silver Creek, N. Y. About 15 years ago this cemetery association became incorporated and began giving deeds. In March, 1897, the association made a deed of this lot in terms to David Woodbury and his heirs, although at that time David Woodbury, as well as his son, the testator, were both deceased. At the time of the death of the testator there was sufficient room upon this lot for two or more graves. The testator's father and mother were buried there, as well as various other near relatives of the testator. Some time before his decease the testator purchased a monument of some considerable size, and had the same erected upon this lot, having his own name placed thereon, as well as that of the father and mother and the other relatives buried there. It is entirely apparent that the testator designed, at the time of the erection of this monument, to make this lot his burial place, and there is no evidence indicating any change of such intention down to the time of his death. In other words, he had made ample provision prior to his death for such a monument as he desired, and for a place of burial. No objection is made to the fact that the widow saw fit to procure a lot in the village of Gowanda, and to have the remains of her husband buried at that place; but, under the circumstances referred to, she was not justified in paying the expense of the same out of the funds of the estate. It would have been the duty of the executrix to have given proper burial to the testator, and to have erected a suitable monument at his grave, had he not himself during his lifetime provided for the same. Necessary and reasonable funeral expenses are a charge upon the estate, and have a preference over all debts against it, and the law implies a promise on the part of the executor to pay the one who, in the absence of or neglect of the executor, incurs or pays such expense. Patterson v. Patterson, 59 N. Y. 574, 17 Am. Rep. 384. Such duty is analogous to the obligation of a father to furnish necessaries to a child, and of a husband to a wife, from which the law implies a promise to pay him who does what the father or the husband in that respect omits. Jessup, Surr. Pr. 936. This rule, however, is modified where a person unnecessarily interferes or gives directions as to expenditures of interment. Quin v. Hill, 4 Dem. Sur. 69; Rappelyea v. Russell, 1 Daly, 214. The testator was a man comparatively economical and methodical in his business affairs. He had carefully arranged all the details for his burial and his final resting place. It was entirely natural that he should have desired his burial by the side of his father and mother, and his wishes in this particular could have been

carried out without expense to the estate. The two items objected
to should be disallowed.

The accounting executor also objects to the administrator's account
as follows:

"Schedule A of said account should be surcharged with the sum of $140
owing to said testator at the time of his decease by Daniel P. Barnard, the
same being a valid legal claim against a solvent debtor, and which, as a
part of the assets of said estate, came to the hands of said Marjorie J. Wood-
bury as such executrix."

For the purpose of maintaining this objection, the executor called
and examined the alleged debtor, Mr. Barnard. Such examination
disclosed the fact that the testator, during several years immediately
preceding his death, had rendered legal services for Barnard amount-
ing to the sum of $140. Barnard was interrogated particularly in
regard to the nature of these services and the circumstances under
which the same were rendered. He testified that the actual disburse-
ments incurred by the testator in connection with such services had
been paid by him, but that he had not paid for the services them-
selves. This evidence was sufficient, if unexplained, to establish an
absolute liability against Barnard; for, while the evidence did not
disclose any express promise on the part of Barnard to pay, yet the
law will presume, from the fact of the rendition of such services, a
promise on Barnard's part to pay what the same were reasonably
worth. Barnard was then asked by his own counsel to explain the
arrangement between himself and the testator in regard to com-
pensation for such services. This evidence was objected to on the
grounds that the witness was incompetent, under section 829 of the
Code. The evidence, however, was taken conditionally by consent,
to be retained or subsequently stricken out with the proper excep-
tion. Barnard testified, in substance, that the services so rendered
by the testator were in connection with the prosecution of doubtful
claims, and that testator told him, at the time of his employment,
that Barnard must pay the disbursements, and, in case testator suc-
ceeded in making collection, he should also pay for the services,
otherwise he should not; and that nothing was collected on any of
these demands. Barnard would have been an incompetent witness,
under section 829 of the Code, to have testified in the first instance
to any personal transaction with the testator for the purpose of re-
lieving himself from liability for these services; but when called by
the adverse party, and examined to a sufficient extent regarding
these transactions to establish liability against him, he was relieved
from such incompetency, and thereby enabled to explain the entire
transaction, although such explanation involved the detailing of per-
sonal transactions between himself and the testator. Nay v. Curley,
113 N. Y. 575, 21 N. E. 698; Merritt v. Campbell, 79 N. Y. 625.

The court, in the opinion in the case of Nay v. Curley, speaking
of the evidence in controversy, says:

"It was evidence directly within the prohibition of section 829, and did
not fall within the exception in that section, since the plaintiffs had not been
examined concerning that transaction, in their own behalf or otherwise.
There was no error, therefore, in excluding the question put to the defendant,
if its admissibility is to be determined by section 829. But that section was

not intended to abrogate the principle in the law of evidence that where a party calls a witness and examines him as to a particular part of a communication or transaction, the other party may call out the whole of the communication or transaction bearing upon or tending to explain or qualify the particular part to which the examination of the other party was directed. This rule does not need the sanction of authority. It is founded upon obvious equity and justice. A part of the truth often implies a falsehood, and in the search for truth through the examination of witnesses courts do not countenance partial statements of facts by witnesses. The principle adverted to is just as applicable in reason to a case where a party calls an adverse party and examines him as to one fact or phase of a transaction in his favor, and then discontinues the inquiry, as in any other. The party examined by the other may, at his own instance, complete the narration for the purpose of explaining, modifying, or putting in a different light the particular part to which the examination by the adverse party was restricted. Section 829 in no manner affects the application of the rule. If a party calls the adverse party, and examines him as to a personal communication or transaction with a deceased person, in reference to which he would be precluded from testifying in his own behalf under that section, the witness is entitled to state the whole transaction or conversation, and thereby explain or qualify the testimony called out by the other party."

The other issues raised by the objections filed are disposed of with sufficient certainty in the findings submitted, and need no further discussion in this connection.

Decreed accordingly.