In the Matter of the Estate of HYMAN SHARFF, Deceased.

Surrogate's Court, Kings County, April 15, 1930.

*Jacob Silverstein* [*Abraham Rickman* of counsel], for the executor.

*Maximillian L. Blek,* for David Dolisky, legatee.

*Benjamin A. Hartstein,* for Elizabeth Bulogh Keller, legatee.

*Benjamin Koenigsberg,* for Rabbi Jacob Joseph School, legatee.

*William Weiss,* for Ohel Torah Society, legatee.

*Stroock & Stroock,* for Montefiore Hospital for Chronic Diseases, legatee.

*William Murray,* special guardian for infants.

WINGATE, S. The questions here at issue concern the manner and order of abatement of the legacies provided by the will of this testator. The total sums given amount to $79,000. The exact sum which will ultimately be payable cannot presently be determined by reason of pending litigation, but it will certainly be insufficient to pay all of the legacies in full.

As a result of the testimony adduced on the hearing, all parties are agreed that the legacy to Elizabeth Bulogh, who was decedent's housekeeper, is entitled to preference by reason of the fact that it was given in payment for services rendered and thus founded upon a valuable consideration. (*Matter of Woodbury,* 40 Misc. 143, 148; *Matter of Schaaf,* 120 id. 292, 294.)

The remaining legacies naturally group themselves into four classes: Item " Second " bequeaths $1,000 for the care of testator's cemetery plot; items " Fifth," " Sixth," " Eighth," " Ninth," " Tenth," " Eleventh " and " Twelfth " give an aggregate total of $14,000 to certain named organizations for the purpose of having prayers for the dead said for specified periods for decedent and his wife; items " Third," " Fourth " and " Seventh " give total sums of $9,500 to three hospitals for the endowment of memorial beds, and the balance is bequeathed to brothers, sisters, nephews, nieces and a friend. This last class totals $45,000.

In view of the probable distributive value of the estate, the determination is narrowed to the question as to whether one or more of the first three classes of bequests are to receive priority over the fourth class consisting of ordinary general legacies.

That the bequest for care of the cemetery plot is entitled to such precedence is scarcely open to question both on theory and authority. It has ever been the policy of the law to grant a preference to expenses necessary for the disposal of the remains of the deceased, to their care in accordance with his wishes, and to the attendant religious ceremonies of his faith. (*Matter of Meek,* 113 Misc. 301, 304; *Wood* v. *Vandenburgh,* 6 Paige, 277, 284, 285; *Matter of Hinman,* 32 Misc. 536, 538; *Matter of Brundage,* 101 id.

528, 537; affd., 186 App. Div. 722; modified on other grounds, 226 N. Y. 691; *Matter of Maverick*, 135 App. Div. 44, 45; affd., 198 N. Y. 618.)

By a parity of reasoning, the legacies of the second class are entitled to a preference in payment over the bequests to relatives. The prayers for the dead which testator thereby sought to assure are no less a part of the religious observances of his religion by reason of the fact that they are to be continued for a considerable period after his actual funeral than if they were to be performed thereat. This court has always recognized such ceremonies, whether, as here, the religious observances of the orthodox Hebrew or masses for the repose of the soul of the departed, celebrated in the Roman Catholic church, as being a matter of particular concern to the deceased and, therefore, peculiarly deserving of priority as being substantially a part of the funeral rites.

The third class of bequests is not capable of such ready disposal. Item " Third " gives $2,500 to the Montefiore Home for Chronic Invalids for the maintenance of a bed in memory of testator and his wife; item " Fourth " gives $2,000 to the Beth Israel Hospital for a like purpose, the gift of $5,000 to the United Israel-Zion Hospital being for two beds, one as a memorial to the testator and the other to his wife.

The executor urges that these bequests should also be preferred to the general legacies to individuals. It may be noted in passing that he will suffer a greater financial loss than any other legatee if this construction is adopted.

It is of course fundamental in this, as in all other questions of testamentary construction and estate administration, that the testator's intention, so far as ascertainable, must control. (*Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339, 343.) Therefore, in reaching a determination here, we must be guided solely by the words which he used without the aid of extraneous evidence, since the terms of the will are unambiguous.

It has sometimes been said that a legacy is to be given preferential treatment where it is founded upon a consideration, and it is upon this principle that the executor bases his contention, arguing that since the hospitals are to establish beds in memory of the testator and his wife, it places them in the position of purchasers. No authority is cited which presents facts analogous to those here found, and the only language which has been found by the court in a New York decision which might lend weight to such a position is found in *Wood* v. *Vandenburgh* (6 Paige, 277, at p. 286). On the other hand, there seems to be a certain amount of early English authority to the effect that the only consideration which will be

given weight in this connection is a past consideration, that is, one which existed at the time of testator's death. (See cases cited, 40 Cyc. 1908, note 63.) If this is a correct limitation of the rule it seems a peculiar reversal of the usual governing principle applicable to contracts. On ordinary principles, it would seem that the setting aside and maintenance of beds in memory of the testator and his wife, at his request, was such an act as would raise a semi-contractual relation, thereby placing the payment of the sum directed to be paid in a different category from that of a pure voluntary gift. (*Matter of Gassman*, 10 Wkly. Notes Cas. [Pa.] 275, 276. See, also, *Harper's Appeal*, 111 Penn. St. 243, 245.)

An additional consideration of some weight tending toward a preference for these legacies is the fact that the sums are expressly given for the creation of memorials for the testator and his wife. If testator had directed that this sum of $9,500 should be used in erecting a monument upon his cemetery plot as a memorial to himself and his wife, there can be no question, on the adjudications above cited, that the entire sum without abatement would have been payable for that purpose. Instead of directing such a purely selfish expenditure for memorial purposes, the testator has here directed the use of a like sum, expressly in memory of himself and his wife, in havens of refuge for the sick and unfortunate. Can it be that this charitable and widely beneficial lasting monument to him must fail, while a perishable column of granite or marble would be sustained by the courts?

It is possibly beyond the proper scope of judicial notice, yet it is unquestionably a matter of common knowledge, that the endowment of a hospital bed requires the setting aside of a minimum specified sum. Any lesser sum will fail in the accomplishment of such a purpose. If, therefore, any deduction from such sum, by way of abatement, be made, the entire testamentary purpose in this direction would fail of fulfillment. In such a case, therefore, the question presented is not whether a testator desired such legacies to abate proportionately with general legacies to individuals, but whether it was consonant with his wishes that the charitable bequests should be entirely deleted in favor of the others.

In many respects the will at bar is unique in the experience of this court. Its dispositive provisions cover ten closely type-written pages of which the first seven are devoted to these bequests for charitable and religious objects. The largest individual bequest and almost a third of the total of such bequests are given to strangers, the balance being divided among brothers and sisters, nephews and nieces. In at least two instances the whereabouts of benefited brothers appear to have been unknown to the testator, since he

gives directions for efforts to locate them by publication in three widely separated European cities. A reading and analysis of the entire document leaves the impression with the court that the decedent was a deeply religious and charitable man, who, while desiring to act fairly toward his relations although he might long since have lost touch with them, was chiefly concerned with works of religion, charity and benevolence, and that his fundamental wishes would be thwarted were his charitable benefactions to fail utterly by reason of the awarding of a few extra dollars to collateral relatives, some of whom, at least, had apparently not communicated with him for years.

The court is, therefore, of the opinion that the bequests in items " Third," " Fourth " and " Seventh " of the will are entitled to priority of payment over the legacies to individuals.

No objection has been interposed to the intermediate account of the executor as presented other than heretofore determined. Under the circumstances, he may be permitted to make distribution of $40,000 of the funds in his hands. Of this sum, $34,500 will be used in full payment of the bequests directed in items " Second " to " Twelfth," inclusive, and " Twentieth " of the will, the balance being distributed *pro rata* among the other general legatees.

Submit decree on notice accordingly.