In the Matter of the Estate of M. ALICE CUDDEBACK, Deceased.

Surrogate's Court, Orange County, April 2, 1940.

*Reuben Chase,* for Samuel A. Koback and Richard Shaw, as executors, etc., of M. Alice Cuddeback, deceased.

*Arnold M. Klein,* for the Salvation Army.

*George F. Roesch,* for the Middletown Girl Scout Council.

*Wiggins, Faulkner & Arfmann,* for the Orange-Sullivan Council Boy Scouts of America, the American National Red Cross, and the Orange County Home for Aged Women, Inc.

*Cassedy & Northrop,* for the Young Women's Christian Association of Newburgh, N. Y.

*Watts, Oakes & Bright,* for the Young Men's Christian Association.

*Russell Vernon,* for the Middletown Day Nursery, Inc.

*Edward B. Dunford,* for the Anti-Saloon League of America.

*Sackett, Chapman, Brown & Cross,* for the Tribune Fresh Air Fund.

*J. Allan Ballman,* special guardian for Katherine Weller.

LEMON, Special Surrogate. In a prior accounting the questions now presented for determination were reserved " until the next or final accounting of the executors." This proceeding has been entertained, and the matters are properly before the court.

The questions relate to the order of abatement of the legacies given under the will, and whether certain trust legacies are preferred.

M. Alice Cuddeback, the testatrix, died in 1937 leaving a will dated November 10, 1936, and thereafter probated, which, after

providing for the payment of debts, by paragraph second gave to the trustees named the sum of $25,000 in trust, with directions to invest the same in legal securities, and to pay the net income to a brother, John Weller, for life. Upon the death of John Weller, or in case he predeceased testatrix, the trust was to terminate, and the corpus was then given to Middletown Day Nursery, Inc. Paragraph third in similar language gave the sum of $20,000 to the same trustees with similar directions as to investment and for payment of net income to a sister, Evelyn D. Bush, for life. Upon her death, or in case she predeceased testatrix, the trust was to like-wise terminate and the corpus was then given to The Orange County Home for Aged Women, Inc. Mention was made by testatrix that Evelyn D. Bush was a resident of said home and the bequest was made in gratitude for the fine treatment accorded her; and also by reason of the wish of the deceased husband of testatrix. Paragraph fourth contained instructions to the trustees as to the payment of income; paragraph fifth provided for the foreclosure of mortgages which might be in the trust, and the taking of title to real estate to protect the corpus; and for the receipt of rents, the sale of real property, and that the proceeds from such sale should become part of the trust corpus. Paragraph sixth provided: " In the event that my estate shall consist of mortgage securities to an extent that the face value thereof shall be sufficient to consti-tute the amount of the corpi of the trust funds, or the amount of the corpus of any one trust fund created under this my Last Will and Testament, then I direct my executors hereinafter named to assign such mortgages to the trustees hereinafter named in such amount of face value of the mortgages as shall be sufficient to set up one or more or all of the corpi of the trusts created herein. The number of the corpi of trust funds to be created by such assignment of mortgages, as above set forth, shall depend on the number of and amounts of mortgage securities that shall be part of my estate at the time of my decease."

In paragraph seventh testatrix provided that " mortgage securi-ties " should be construed to mean only mortgages wholly owned by her at the time of her decease. Paragraphs eighth to twenty-second made bequests of legacies, ranging from $500 to $75,000 in amounts, to some thirteen charities, thirteen individuals not related to testatrix, and to three nieces, and then made the nieces residuary legatees with provisions as to survivorship not material here.

All of the legacies provided for in paragraphs eighth to twenty-second are general legacies, with the exception of paragraph eleventh, which is a specific legacy. The twenty-second paragraph makes a

bequest for the perpetual care of a family burial plot and is preferred. (*Matter of Sharff*, 136 Misc. 627; *Matter of Rae,* 140 id. 530.) The account shows that it has been paid in full.

Although the estate amounted to over $400,000 it now appears that there are not sufficient assets to pay all the legacies in full, and that there must be a *pro rata* abatement. The claim of the executors and of the remaindermen under the trusts created in paragraphs second and third are that those legacies are preferred and, therefore, entitled to payment in full. It is argued that they are not subject to abatement for the reason that they are demonstrative legacies. On the other hand, counsel for the general legatees who have appeared, contend that the trust legacies are general legacies, and, therefore, subject to abatement along with the other twenty-eight general legacies included in paragraphs eighth to twenty-first. The solution of the problem hinges upon the question whether the trust legacies are demonstrative or general legacies.

The history of demonstrative legacies is traced by the able surrogate of Kings county in *Matter of Smallman* (138 Misc. 889, 899). The latest decision upon the subject by the Court of Appeals is found in *Matter of Cameron* (278 N. Y. 352) where the court said (at p. 359): " A demonstrative legacy is a bequest of a specific sum of money, stock or something similar, payable out of a particular fund or security. (*Crawford* v. *McCarthy*, 159 N. Y. 514.) "

In the first place, the presumption exists that testatrix expected all legacies to be paid in full. (*Matter of Neil*, 238 N. Y. 138; *Matter of Title G. & T. Co.*, 195 id. 339, 344). It is also a fundamental rule that when the assets of the estate are not enough to pay all general legacies in full, in the absence of a contrary intent, shown by the will, all legacies abate proportionately. (*Matter of Cameron, supra.*) In that case the court said: " Equality is the rule and preference the exception."

The exceptions to this rule do not apply to the case at bar for the reason that it is conceded neither of the life beneficiaries under the trusts were dependent upon the testatrix for support. The remaindermen were charities no closer to testatrix than any of the other thirteen charities, so far as appears from the will, with the possible exception of the reference to The Home for Aged Women, Inc., previously mentioned.

It has uniformly been held that the burden is on the party seeking preference to show that testatrix so intended. In *Matter of Williams* (27 Misc. 716, 717) the court said: " Among a group of general legacies which are mere bounties, priority will not be given to any of them unless the testator's intention to create a preference is most

clearly and unequivocally expressed, and the burden is strongly upon him who would brush away the maxim that equality is equity, and ask that one legatee should be fully satisfied to the loss and detriment of others equally as much and as deservedly entitled. Undoubtedly, in the event of a deficiency of assets, the court should, if possible, cause the loss to be borne equally among the beneficiaries."

It is the fundamental purpose of the court in a construction proceeding to ascertain the intention of testatrix at the time the will was made from the document as a whole. Apparently this will was drawn by an experienced lawyer, and that fact may be considered in determining the meaning of the words used. It must also be kept in mind that it is the duty of the court to construe, not to construct, or make a new will.

Did testatrix intend to create demonstrative legacies under paragraphs second to sixth of her will? It is claimed on the one hand that paragraph sixth made the trust legacies demonstrative by directing the setting up of the trusts from mortgages belonging to the testatrix. It is conceded that at the time of her death she owned mortgages far in excess of the amount necessary to set up the trusts therefrom. It is to be noted that testatrix did not designate any specific mortgages belonging to her and direct the establishment of the trusts from such designated securities. Her mortgages constituted part of her general estate, as did also her cash and other personal property. There was no earmarked fund from which the trusts were to be set up. She stated, " in the event that my estate shall consist of mortgage securities to an extent that the face value thereof shall be sufficient * * * " and then provided for the assignment of mortgage securities to the trusts. The setting up of the trusts from mortgages was contingent upon mortgages remaining in her estate. In view of the many directions to the trustees contained in paragraphs second and third concerning these trusts, the direction to the executors to assign mortgages, without designating any particular mortgage, would appear to be merely an administrative direction as in *Matter of Casper* (259 App. Div. 56) and in *Matter of Beecroft* (146 Misc. 344). The mortgages constituted a considerable part of the estate. They were liable for the payment of debts and administration expenses in addition to the payment of legacies. It was a general fund for general purposes; not a specific fund for a specific purpose. The trust legacies were payable out of the estate generally. They were not charged upon any designated fund so as to bring them within the definition of demonstrative legacies.

The words of Mr. Justice YOUNG in *Matter of Low* (232 App. Div. 414; affd., 257 N. Y. 613) are applicable here. In that case the court construed the will of Seth Low, and said (at pp. 419, 421): " If these legacies given by the 17th clause of this will to the remaindermen named constitute demonstrative legacies, any will which creates several trusts for different groups of legatees (aside from the residuary estate) would be susceptible of a similar construction. * * * A demonstrative legacy is a mere creation or fiction of law, intended to cover a situation arising from some uncertainty or ambiguity in the language of a will, where the real intent of the testator is not apparent. I venture to say that no attorney, much less a layman, would ever intentionally attempt to create a demonstrative legacy by language so uncertain as to require judicial construction. Had the testator or his draftsman actually intended any such result, he would have expressed that intention in no uncertain language."

It is not reasonable to assume that testatrix intended to prefer the trust legacies over legacies to nieces and other individuals for whom she had high regard, as shown by the substantial gifts to them, in one instance in the sum of $75,000.

In the absence of a clearly expressed intent by testatrix to make the trust legacies demonstrative it must be held that they are general legacies subject to proportionate abatement with the other general legacies, and the will is so construed.

Settle decree on five days' notice, or by consent.